# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**JOHN T. WILSON**
Anderson, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| PETER GRIFFITH, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 48A02-1310-CR-909 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable Thomas Newman, Jr., Judge
Cause No. 48C03-1111-FC-2033

**September 30, 2014**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Peter Griffith appeals his conviction and sentence for battery by means of a deadly weapon, a class C felony. Griffith raises two issues, which we revise and restate as:

I.      Whether the trial court abused its discretion in excluding certain evidence; and

II.     Whether Griffith's sentence is inappropriate in light of the nature of the offense and his character.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On October 17, 2011, Darren and Summer Wiles were at their residence, where they lived together with their two children, Darren's mother, and Summer's mother. Griffith is Summer's father and Darren's father-in-law. At some point in late evening, Summer's mother began to argue with Darren's mother, and Darren "made [Summer's] mom leave." Transcript at 261. Summer's mother walked outside, and Darren and Summer walked out behind her. Griffith, who had been drinking and appeared intoxicated, approached the residence from across the street yelling that Darren had hurt "[his] baby girl." Transcript at 261. Griffith also "mumble[ed] stuff . . . about he's going to kill" Darren. Id. at 239. Darren said "you don't want to fight me old man" and "go home," but Griffith kept approaching. Id. at 239, 262. Summer noticed that Griffith had a knife. Summer was standing between Griffith and Darren, and she attempted to push Griffith back but he would not budge. Griffith "came running up on" Darren with "a knife in his hand," the two men "went to the ground," and Griffith "stabbed [Darren] in [his] back." Id. at 239-240. Griffith cut Darren on the arm and "tried to cut [his] throat." Id. at 244. Summer was able to separate Griffith and Darren, and the police arrived.

2

On November 3, 2011, the State charged Griffith with battery by means of a deadly weapon, a class C felony. After several delays, a jury trial was held in September 2013. During the trial, the State presented the testimony of Darren, Summer, another eyewitness to the altercation, and police who arrived on the scene and investigated the stabbing. Police Chief Larry Crenshaw, who was a detective at the time of the altercation, testified that he was assigned to investigate the stabbing, and that Griffith reported that "his son-in-law had hit him with a two [] by four." Id. at 158. When later asked if he "locate[d] the two [] by four," Chief Crenshaw answered "No." Id. at 159.

Darren testified that Griffith had a knife in his hand, that Griffith ran up to him, and that they "went to the ground and that's when [Griffith] stabbed me in my back." Id. at 240. Darren also testified that he "tried to evade [Griffith] and he kept trying to come at me and he cut me on my arm and he tried to cut my throat and I was trying to protect myself. I mean he, I feel he was really trying to take my life." Id. at 244. Summer indicated that Darren did not attack Griffith, that Griffith was the aggressor, and that Darren told Griffith that he did not want to fight. When asked what happened after Darren was stabbed, Summer testified "like Darren didn't know he was stabbed until I said something to him then I think . . . someone said something about cops and a lot of people split up . . . ." Id. at 265-266.

Following the presentation of the State's witnesses, Griffith informed the trial court that he wished to introduce the testimony of two witnesses, Timothy Brinson and Catrina Kennett, to impeach Darren. Griffith stated that the witnesses would testify that Darren had conversations with them following the altercation during which he told a

3

story different than the one to which he testified. The State objected and argued that neither of Griffith's witnesses were present at the time of the incident and that their testimony was inadmissible hearsay. The State argued that the second reason the testimony of Brinson and Kennett should be excluded was because, "in order to impeach a witness, you have to give the witness the opportunity to deny that he did or said whatever it is your rebuttal witnesses are going to say" and that Darren "was never asked about any conversation with either one [] of these two [] witnesses." Id. at 278. The court sustained the State's objections. Griffith's defense counsel stated: "Well I'll call [Darren] as my case in chief and ask him those questions. Is he still available?" Id. at 279. The prosecutor indicated he did not know if Darren was still available and argued that "there's no reason that he couldn't have asked these questions while [Darren] was on the stand" and that "you can't call a witness just to rebut his testimony." Id. at 279-280. The court noted that "if you call him and lay the foundation then you can impeach him." Id. at 280. The court later stated that Indiana courts forbid impeachment of one's own witness by a prior inconsistent statement if the sole purpose in calling the witness was to place otherwise inadmissible evidence before the jury. Griffith's counsel stated: "Let me do this Judge. If your ruling is against me let me briefly put [Brinson and Kennett] on to preserve the record and then we'll go from there," and the court agreed. Id. at 282.

Outside the presence of the jury, Brinson testified that, approximately two months after the altercation between Griffith and Darren, Darren told him that "he took a two (2) by four (4) and hit [Griffith] a few times with the two (2) by four (4) and then [Griffith] cut him with a knife." Id. at 284. Kennett stated that, on the day following the

4

altercation, Darren told her that he "had got into it with Summer's dad" and that he "hit Summer's dad with a two [] by four [] and then he said Summer's dad stabbed him after he hit him and then he said he hit him again after [Griffith] stabbed him." Id. at 287.

Following the offer of proof outside the presence of the jury, the court asked if there was anything further, and Griffith's counsel responded "No Judge, I have one (1) witness to call and we'll rest." Id. The jury entered, and defense counsel called Griffith to the stand. Griffith then testified before the jury that Darren "pick[ed] up [a] stick and then he started coming at [him]," that "[Griffith's] daughter was standing in front of [Griffith] when this happened," that Griffith "pushed her out of the way you know to keep her from getting hit," that he "went up and [] pushed [Darren] back once and that's when [Darren] hit [Griffith] in the head and [Griffith] pushed [Darren] again . . . ." Id. at 298. Griffith testified that Darren "started rearing back a third time with that two (2) by four (4) [which] is when I swung the first time at him with the blade . . . I just wanted him back and I pushed him again and he just reared back even harder . . . ." Id. at 298-299. Griffith stated that the "first swing" was "a stick that was swung by Darren." Id. at 304. On cross-examination, the prosecutor asked Griffith to describe the "two [] by four," confirmed Griffith's testimony that Darren struck him with a "two [] by four," and then asked "[a two by four] that the police couldn't find," and Griffith replied "I have no idea, I can't answer that." Id. at 307. Following Griffith's testimony, the court asked defense counsel if he had any more witnesses, and defense counsel stated that the defense rested. The jury found Griffith guilty as charged. The court sentenced Griffith to four years in the Indiana Department of Correction.

DISCUSSION

I.

The first issue is whether the trial court abused its discretion in excluding certain evidence. The admission and exclusion of evidence falls within the sound discretion of the trial court, and we review the admission of evidence only for an abuse of discretion. Wilson v. State, 765 N.E.2d 1265, 1272 (Ind. 2002). An abuse of discretion occurs "where the decision is clearly against the logic and effect of the facts and circumstances." Smith v. State, 754 N.E.2d 502, 504 (Ind. 2001).

Griffith contends that he was denied a meaningful opportunity to present a complete defense and that the court prevented him from presenting testimony that he acted in self-defense. He argues that Ind. Evidence Rule 803(3) provides an exception to the hearsay rule and that he "may present evidence of [Darren's] statements to the extent that they revealed that [he] intended to give false testimony or make false allegations." Appellant's Brief at 11. Griffith also argues that he had the right to present his own witnesses to present his version of the facts.

The State maintains that a party is forbidden from placing a witness on the stand when the party's sole purpose in doing so is to present otherwise inadmissible evidence cloaked as impeachment. Appellee's Brief at 6. The State contends that neither of Griffith's "proposed witnesses was present at the time of the altercation between Griffith and [Darren] and could not testify as to what happened," that "[i]n order for either witness's testimony to be admissible . . . , Griffith would have needed to have questioned Darren about any such conversations he had with the witnesses," and that "Griffith did

6

not lay an adequate foundation for impeachment and his request to have two additional witnesses testify was properly denied." Id. at 7-8. The State also asserts that Griffith was not prevented from raising a claim of self-defense, that Griffith testified in his defense, and that the jury was free to consider his testimony in reaching its verdict.

Hearsay is evidence of a statement made out of court that is offered in a judicial proceeding to prove the truth of a fact asserted in the statement. Ind. Evid. Rule 801(c). Hearsay is not admissible unless it fits within some exception to the hearsay rule. Craig v. State, 630 N.E.2d 207, 209 (Ind. 1994). Ind. Evid. Rule 803 provides that certain statements are not excluded by the rule against hearsay, including under subsection (3) "[a] statement of the declarant's then-existing state of mind (such as motive, design, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed . . . ." With respect to impeachment, Ind. Evid. Rule 607 provides: "Any party, including the party that called the witness, may attack the witness's credibility." However, Ind. Evid. Rule 613(b) provides:

> Extrinsic Evidence of a Prior Inconsistent Statement. Extrinsic evidence of a witness's prior inconsistent statement is admissible *only if the witness is given an opportunity to explain or deny the statement* and an adverse party is given an opportunity to examine the witness about it, or if justice so requires. This subdivision (b) does not apply to an opposing party's statement under Rule 801(d)(2).

(Emphasis added).

Here, Griffith does not assert that Brinson and Kennett observed any portion of the altercation between Griffith and Darren. To the extent the testimony Griffith wished to elicit from Brinson and Kennett related to the truth of the facts asserted in Darren's

7

alleged statements, their testimony would have constituted inadmissible hearsay. However, under Evid. Rule 613(b), their testimony that Darren made a prior statement to them which was inconsistent with his trial testimony would have been admissible "only if [Darren] [was] given an opportunity to explain or deny the statement." Darren was not asked to explain or deny any alleged statement he may have made to Brinson and Kennett which was inconsistent with his trial testimony. Griffith did not call or attempt to call Darren during the presentation of his case in order to provide an opportunity to explain or deny his alleged statements to Brinson and Kennett. As noted above, after the court stated that "*if you call him* and lay the foundation then you can impeach him" and later that "Indiana Courts forbid impeachment of ones [sic] own witness . . . by prior inconsistent statement if the sole purpose in calling the witness was to place otherwise inadmissible evidence before the jury," Griffith's counsel then said: "Let me do this Judge. *If* your ruling is against me let me briefly put [Brinson and Kennett] on to preserve the record *and then we'll go from there*." Id. at 280, 282 (emphases added). The court said "Alright." Id. at 282. The colloquy between the court and Griffith's counsel does not reveal that the court categorically foreclosed the possibility of Griffith calling Darren as a witness as the dissent states. The offer of proof related to what Brinson and Kennett would testify to if Griffith called them as witnesses. However, admitting the testimony of Brinson and Kennett was not proper unless Darren was given the opportunity to explain or deny his alleged prior inconsistent statements. After Griffith's counsel presented the offer of proof, he did not attempt to call Darren as a witness, but rather called Griffith to the stand. Then, following Griffith's testimony, the

8

court asked defense counsel if he had any more witnesses, clearly giving Griffith the opportunity to call Darren as a witness. Instead, defense counsel stated "Your Honor the defense rest [sic]." Id. at 324.

Pursuant to Evid. Rule 613(b) it would have been improper for the court to admit extrinsic evidence from Brinson and Kennett of Darren's alleged prior inconsistent statements without Darren having been given the opportunity to explain or deny the inconsistent statements. See Ind. Evid. Rule 613(b) (providing extrinsic evidence of a witness's prior inconsistent statement "is admissible *only if the witness is given an opportunity to explain or deny the statement*") (emphasis added). C.f. Bald v. State, 766 N.E.2d 1170, 1174 (Ind. 2002) (citing Griffin v. State, 754 N.E.2d 899 (Ind. 2001), on reh'g, 763 N.E.2d 450, but noting that, unlike the witness in Griffin who was impeached by the testimony of another witness, the witness at issue admitted making the prior statement). Also, we cannot say that the testimony Griffith wished to elicit would have been admissible under the hearsay exception found at Evid. Rule 803(3) as the testimony did not relate to Darren's state of mind or intent at the time of the altercation. See Ind. Evid. Rule 803(3) (providing that the hearsay exception does not apply to statements "*of memory or belief to prove the fact remembered or believed*") (emphasis added). Based upon the record, we cannot say the trial court abused its discretion in excluding the testimony Griffith wished to elicit from Brinson and Kennett. Further, Griffith's defense counsel cross-examined Darren but did not ask him anything concerning the statements to Brinson and Kennett, Griffith did not call or attempt to call Darren as a witness in the presentation of his defense, Griffith testified that Darren took the "first swing" with a

9

piece of wood, see Transcript at 304, and Griffith was not denied the opportunity to impeach Darren's testimony or present his self-defense claim.[1]

## II.

The next issue is whether Griffith's sentence is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

Griffith cites to Appellate Rule 7(B) and argues that his criminal history does not support a four year executed sentence. With respect to his character, Griffith argues that he is fifty-three years old, has been in a relationship with the same woman for thirty-three years, has not abused illegal substances for twenty years, had a stable residence for four years, was in the Navy, had not worked for several years due to health issues, and showed remorse for his actions. With respect to the nature of the offense, he argues that the offense was not deplorable and that there is evidence he did not act without provocation, including the fact that Darren was so out of control he did not know he was stabbed until Summer told him. Griffith further argues that Darren no longer lives in the area in which Griffith lives, there would be no contact between Darren and him if he were placed on home detention, and that the court erred in not allowing the non-suspendable portion of

---

[1] Contrary to the dissent's assertion, we do not rely on Griffin v. State, 754 N.E.2d 899 (Ind. 2001), on reh'g, 763 N.E.2d 450, or Appleton v. State, 740 N.E.2d 122 (Ind. 2001), to resolve Griffith's claim.

10

his sentence to be served on home detention. Griffith also argues that the court's sentencing statement was insufficient and he should be remanded for resentencing. The State maintains that remand is not necessary and that Griffith's sentence is not inappropriate, and that the trial court considered the factors raised by Griffith, including his criminal history, remorse, character, and the nature of the offense. The State further argues that Griffith's health problems did not prevent him from committing a violent offense, that he committed the offense on Darren's property on which he had no right to be, and that Griffith had misdemeanor convictions on his record.

Our review of the nature of the offense reveals that Griffith was intoxicated, carried a knife, entered the property of Darren and Summer, and stated he was "going to kill" Darren. Transcript at 261. Darren told Griffith to leave, but Griffith attacked Darren, stabbed him in the back, and cut him on the arm. Our review of the character of the offender reveals that, according to the presentence investigation report (the "PSI"), Griffith's criminal history includes "Trespass: Injure Property" as a misdemeanor in 1986, "Receive/ETC Known Stolen Property" in 1991, "Sell Marijuana" in 1996, and possession of marijuana in 1998. Appellant's Appendix at 33-34. Under the summary of legal history, the PSI provides that Griffith's "first contact with the criminal justice system was at 26," that "[h]e has six prior arrests in Arizona and California, the last being 10 years ago," and that "[t]his will be [his] first conviction in the State of Indiana." Id. at 34. The PSI also provides that Griffith was enlisted in the Navy in 1978 and discharged in 1980, that while enlisted he received a "certification as a diesel mechanic and [for] small engine repair," that he has been unemployed "for the past 5 years because of

11

physical health issues," and that he "is attempting to get disability benefits." Id. at 36. As to Griffith's health, the PSI states that Griffith has two herniated discs, degenerative disc disease, and sciatica, he has been diagnosed with hepatitis C, he is on medications for high blood pressure and cholesterol, he is prescribed hydrocodone for his back pain, and that he "receives his medical treatment through the VA." Id. Griffith received the advisory sentence for a class C felony, and after due consideration, we cannot say that Griffith has met his burden of showing that the sentence imposed by the trial court is inappropriate in light of the nature of the offense and his character.

To the extent Griffith argues the court's sentencing statement was insufficient or that the court abused its discretion in sentencing him for failing to recognize his remorse as a mitigating circumstance or failing to place him on home detention for the non-suspendable portion of his sentence, we need not address this issue because we find that his sentence is not inappropriate under Ind. Appellate Rule 7(B). See Windhorst v. State, 868 N.E.2d 504, 507 (Ind. 2007) (holding that, in the absence of a proper sentencing order, Indiana appellate courts may either remand for resentencing or exercise their authority to review the sentence pursuant to Ind. Appellate Rule 7(B)), reh'g denied; Shelby v. State, 986 N.E.2d 345, 370 (Ind. Ct. App. 2013) (holding that "even if the trial court did abuse its discretion by failing to consider the alleged mitigating factor of residual doubt, this does not require remand for resentencing"), trans. denied; Chappell v. State, 966 N.E.2d 124, 134 n.10 (Ind. Ct. App. 2012) (holding that any error in sentencing is harmless if the sentence imposed is not inappropriate), trans. denied; Mendoza v. State, 869 N.E.2d 546, 556 (Ind. Ct. App. 2007) (citing Windhorst and

holding that, "even if the trial court is found to have abused its discretion in the process it used to sentence the defendant, the error is harmless if the sentence imposed was not inappropriate"), trans. denied.

CONCLUSION

For the foregoing reasons, we affirm Griffith's conviction and sentence for battery by means of a deadly weapon.

Affirmed.

BRADFORD, J., concurs.

BARNES, J., dissents with separate opinion.

13

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| PETER GRIFFITH, | ) | |
| | ) | |
|     Appellant-Defendant, | ) | |
| | ) | |
|         vs. | ) | No. 48A02-1310-CR-909 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
|     Appellee-Plaintiff. | ) | |

**BARNES, Judge, dissenting**

I dissent because I believe my colleagues, as well as the trial court, applied a too stringent standard in their interpretation of Evidence Rule 613(b). It is clear to me that Federal Rule of Evidence 613(b), which is identical to Indiana Evidence Rule 613(b), allows impeachment by prior inconsistent statements after the witness to be impeached has already testified. This is true even if the party wanting to introduce the prior inconsistent statements did not cross-examine the witness about those statements. See U.S. v. Della Rose, 403 F.3d 891, 903 (7th Cir. 2005); U.S. v. Schnapp, 322 F.3d 564, 570-71 (8th Cir. 2003); U.S. v. Young, 86 F.3d 944, 949 (9th Cir. 1996); U.S. v. McCall, 85 F.3d 1193, 1196-97 (6th Cir. 1996); Wammock v. Celotex Corp., 793 F.2d 1518, 1521-22 (11th Cir. 1986). The Advisory Committee notes to Federal Rule of Evidence 613(b) state in part, "The traditional insistence that the attendance of the witness be

directed to the statement on cross-examination is relaxed in favor of simply providing the witness an opportunity to explain and the opposite party an opportunity to examine on the statement, with no specification of any particular time or sequence."

In Orr v. State, 968 N.E.2d 858, 863 (Ind. Ct. App. 2012), prior to Griffith's trial, another panel of this court adopted the federal interpretation of Evidence Rule 613(b). The Orr panel did state that the preferred procedure is to confront a witness with a prior inconsistent statement before it is introduced into evidence and that trial courts retain wide discretion in deciding the proper sequence for impeachment. The panel made clear, however, that "a party who is able to recall a witness to explain or deny prior statements cannot later object on the basis of Rule 613(b)." Orr, 968 N.E.2d at 862. The panel also noted that Evidence Rule 613(b) permits the introduction of prior inconsistent statements without any opportunity for explanation if "the interests of justice otherwise require." Id. at 864. The panel concluded:

> In determining whether to require a specific sequence, trial courts should consider: the trial court's inclination to allow the impeachee to be recalled as a witness to explain, the witness's availability to be recalled, the likelihood of unfair prejudice from repetition of evidence admissible only for impeachment, and other factors, for example, the importance of the credibility of the impeachee to the resolution of the case.

Id. at 865 (citation omitted).

Here, the trial court categorically excluded the possibility of Griffith presenting his impeachment evidence without any examination of whether Darren would be available to be recalled by the State to explain his prior inconsistent statements or of the danger of unfair prejudice. It also is clear that Darren's credibility about the sequence of events—

15

whether he struck Griffith several times with a large piece of wood before Griffith stabbed him, or vice versa—was very important to the resolution of the case and Griffith's self-defense claim. The trial court apparently believed Griffith was required to cross-examine Darren about those statements during the State's case-in-chief, but as Orr had already held, Evidence Rule 613(b) did not require him to do so. The trial court's ruling was based on a misinterpretation of the law, in my view. A trial court abuses its discretion in ruling on the admissibility of evidence if it has misinterpreted the law. Bryant v. State, 959 N.E.2d 315, 321 (Ind. Ct. App. 2011).

Also, Griffith proposed to address the trial court's and the State's concerns about sequence by offering to first call Darren as his own witness to question him about the prior inconsistent statements before introducing them into evidence.[2] Again, the trial court categorically refused to allow this procedure. It apparently did so based upon cases such as Griffin v. State, 754 N.E.2d 899 (Ind. 2001), and Appleton v. State, 740 N.E.2d 122 (Ind. 2001). Those cases state that, under Evidence Rule 607, a party cannot call a witness when the party's sole purpose in doing so is to introduce otherwise inadmissible evidence to the jury cloaked as impeachment. Griffin, 754 N.E.2d at 904; Appleton, 740 N.E.2d at 125. This rule does not apply "where the witness observed the underlying crime and provided, on the stand, other relevant testimony." Herron v. State, 10 N.E.3d

---

[2] The majority states that Griffith did not attempt to call Darren as a witness. I believe the record reflects that Griffith did in fact say he would call Darren as a witness, but the trial court would not allow him to do so. In other words, I conclude Griffith adequately advised the trial court of what he wanted to do and the trial court ruled against him. In order to preserve his claim of error, Griffith was not required to beat a dead horse by repeatedly attempting to call Darren as a witness after the trial court had clearly indicated it would not allow him to do. See Corbally v. State, 5 N.E.3d 463, 468 (Ind. Ct. App. 2014) (holding defendant's withdrawal of objection did not constitute waiver of error on appeal where trial court had indicated it would overrule objection unless defendant made improper stipulation demanded by trial court).

16

552, 556 (Ind. Ct. App. 2014). Here, Darren was of course a witness to the crime; he was the alleged victim and testified on behalf of the State. Griffith's attempt to recall Darren was not just an attempt to introduce otherwise inadmissible hearsay evidence, rather, it was for the purpose of impeaching the testimony he had already given and to give him an opportunity to admit to, explain, or disown the prior inconsistent statements. I do not believe the Griffin/Appleton rule should have barred Griffith's attempt to recall Darren under these circumstances.

I also observe that, even if it would have been preferable for Griffith to have questioned Darren about his alleged prior inconsistent statements during cross-examination, to completely foreclose his ability to present any evidence of those statements without good reason threatened Griffith's Sixth Amendment right to present a defense.

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

Washington v. Texas, 388 U.S. 14, 19, 87 S. Ct. 1920, 1923 (1967). I conclude the trial court abused its discretion in insisting that Griffith had to ask Darren about the prior inconsistent statements during cross-examination and in not exploring other avenues to allow introduction of those statements, such as by allowing either Griffith or the State to recall Darren.

Finally, I cannot conclude that this error in the exclusion of Darren's prior inconsistent statements was harmless. Certainly, there is sufficient evidence to sustain Griffith's conviction despite the error; indeed, there is the possibility that the result of the trial would have been the same even if Griffith was allowed to introduce the statements. However, the harmless error test is different than the test for sufficiency of the evidence. See Hall v. State, 796 N.E.2d 388, 396-97 (Ind. Ct. App. 2003), trans. denied. "The test for harmless error is not whether there was substantial evidence of the defendant's guilt but whether the error contributed to the verdict." Id. at 397. Errors in excluding impeachment evidence may be harmless if the impeachment involved a subject that neither bore directly on an element of the offense or a matter at issue in the case. Rodgers v. State, 422 N.E.2d 1211, 1214 (Ind. 1981). Here, the impeachment bore directly upon whether Griffith acted in self-defense when he stabbed Darren, which obviously is the central matter at issue in this case. I vote to reverse Griffith's conviction and to remand for a new trial. Because I vote to reverse, I offer no opinion at this time on the appropriateness of Griffith's sentence.