
FILED

Jun 02 2015, 11:25 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT
John T. Wilson
Anderson, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# In the
# Indiana Supreme Court

### No. 48S02-1501-CR-10

PETER GRIFFITH,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

### Appeal from the Madison Circuit Court, No. 48C03-1111-FC-2033
### The Honorable Thomas Newman Jr., Judge

### On Petition to Transfer from the Indiana Court of Appeals, No. 48A02-1310-CR-909

**June 2, 2015**

**David, Justice.**

Peter Griffith was convicted of Class C felony battery. This conviction arose out of a physical altercation that occurred between Griffith and his son-in-law, Darren Wiles (Darren). During that altercation, Griffith stabbed Darren in the back one time with a knife. The eyewitnesses agreed that Griffith attacked Darren, and Darren had not provoked the attack. After

the State presented its case at trial, Griffith expressed his intent to call two witnesses. The defense asserted that this proposed testimony would be admitted for the purpose of impeaching Darren's testimony that he had not been the aggressor and had not hit Griffith with a two by four. The trial court allowed the two witnesses to testify outside the presence of the jury. Both testified that after the altercation occurred Darren had told each witness individually that he had hit Griffith with a two by four before Griffith stabbed him. The State objected to the admission of that testimony as hearsay and on the grounds that it could not be admitted for impeachment without Darren first having the opportunity to explain or deny the alleged statements. While it is unclear whether the trial court specifically ruled on the offered testimony or the State's objection, the defense never attempted to call either witness after the jury returned and the trial resumed.

At the time of Griffith's trial, Indiana Rule of Evidence 613(b) provided in pertinent part that "[e]xtrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require." Ind. Evid. Rule 613(b) (2012).[1] We accept transfer in this case to address the application of Rule 613(b). Considering that Indiana Evidence Rule 613(b) uses the same language as Federal Evidence Rule 613(b),[2] we embrace the interpretation of Rule 613(b) as utilized by multiple federal jurisdictions. Under that interpretation, Rule 613(b) does not compel a specific sequence

---

[1] Indiana Rule of Evidence 613(b) now provides that "[e]xtrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires." Ind. Evid. Rule 613(b) (effective Jan. 1, 2014). The slight difference in language does not impact this Court's analysis of the application of Rule 613(b).

[2] Federal Evidence Rule 613(b) provides in pertinent part, "[e]xtrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires."

for the admission of extrinsic evidence of a prior inconsistent statement. Rather, it is within the trial court's discretion to admit extrinsic evidence to impeach a prior inconsistent statement before or after the witness is given the opportunity to explain or deny the alleged statement. However, the preferred method is still to confront the witness with the alleged statement before seeking to admit extrinsic evidence impeaching that statement. Regardless of the sequence in which extrinsic evidence is admitted, the witness must be given the opportunity to admit or deny the prior statement. Here, we conclude that the trial court properly exercised its discretion in excluding Griffith's proposed extrinsic evidence and affirm Griffith's conviction and sentence.

## Facts and Procedural History

Peter Griffith lived at Lot 6 of the Irondale mobile home park in Anderson, Indiana. Griffith's daughter, Summer Wiles (Summer), and son-in-law, Darren Wiles (Darren), also lived in Irondale at Lot 17. Living with Summer and Darren was Summer's mother, Loretta, Darren's mother, and Darren and Summer's two young children. On the night of October 18, 2011, tensions were running high at Lot 17, and a dispute broke out between Loretta and Darren's mother. Darren and Summer were escorting Loretta out of the trailer when they saw Griffith outside, stumbling toward Lot 17 and yelling. Summer specifically recalled Griffith repeatedly yelling, "You hurt my baby girl." (Tr. at 262.) Griffith admitted to having had several drinks that night, and based upon Griffith's demeanor, witnesses believed that he was drunk.

As the defendant came closer to Lot 17, Darren told Griffith to go home and that he did not want to fight him. Despite this, Griffith continued to approach Darren, and a struggle quickly ensued between the two men. At some point, either right before or during this altercation, Griffith pulled a knife. As the fight continued, Darren fell to the ground, and Griffith stabbed him in the back. Darren then picked up a wooden stake and was swinging it to keep Griffith back. Shortly thereafter, the fight broke up, and Loretta quickly helped Griffith leave the scene. Darren then realized the extent of his injury and that he was bleeding profusely.

3

Multiple patrolmen from the Anderson police department arrived at the scene to investigate a reported stabbing. Officer Donavon Baysinger found Darren at Lot 17 with his shirt off and with blood streaming down his side. Paramedics were called, and Darren was taken to St. Vincent's Regional Hospital for treatment. At some point, Griffith was also taken to St. Vincent's for his injuries, and police were able to interview him at the hospital. Griffith told police that Darren had hit him with a two by four. Police also canvased the area where the altercation occurred, interviewed potential witnesses, and investigated the scene. Although a two by four was never recovered, police did collect four smaller wooden stakes in the yard of Lot 17. A knife was also collected from Griffith. No blood or blood spatter evidence was recovered, likely due to the rain that began late that night.

Griffith was ultimately charged with one count of Class C felony battery by means of a deadly weapon.[3] At trial, the only testifying eyewitnesses were a neighbor and Summer, and both testified that Griffith was the initial aggressor. However, Griffith claimed that Darren initiated the argument by threatening Griffith's son and that Darren had picked up a two by four and come after him. Griffith claims that he was hit twice before he started swinging his knife.

After the State rested its case, the defense sought to admit testimony from Catrina Kennett and Tim Brinson. Because Darren testified that he never hit Griffith with a piece of wood, the defense sought to impeach Darren's testimony with testimony from Kennett and Brinson that Darren had told both of them that he *had* hit Griffith with a two by four. The parties disputed whether Griffith could call the two witnesses to impeach Darren's testimony when the defense never cross-examined Darren about his conversations with either witness. The State relied upon Indiana Evidence Rule 607 and precedent from this Court to contest that the defense could not

---

[3] Ind. Code § 35-42-2-1(a)(3) (2008).

recall Darren as its own witness just to impeach his testimony with otherwise inadmissible evidence. [4] The defense argued that under Rule 613(b), extrinsic evidence of a prior inconsistent statement can be used as long as the declarant is given the opportunity to explain or deny that statement at some point, and Darren did not need to be cross-examined on his specific conversations prior to the defense submitting the impeaching testimony. The record is unclear whether the trial court explicitly ruled that Griffith could not call the witnesses, but at one point the trial court stated that if Griffith called Darren and laid a proper foundation, then Darren could be impeached.

Defense counsel was permitted to call both witnesses outside of the presence of the jury. Brinson and Kennett testified that after the incident occurred Darren told both of them on separate occasions that he had hit Griffith multiple times with a two by four before Griffith stabbed him. Once the jury returned, the defense never attempted to call either witness or Darren. The defense called Griffith and then rested its case.

The jury found Griffith guilty as charged. Griffith was sentenced to four years executed in the Department of Correction. Griffith appealed, arguing that he was denied a meaningful opportunity to present a complete defense. Specifically, Griffith contended that the trial court erred in preventing him from presenting testimony of two witnesses that were critical to his claim

---

[4] Rule 607 previously provided that "[t]he credibility of a witness may be attacked by any party, including the party calling the witness." Ind. Evid. Rule 607 (2012). The rule now provides that "[a]ny party, including the party that called the witness, may attack the witness's credibility." Ind. Evid. Rule 607 (effective Jan. 1, 2014). However, "a party is forbidden from placing a witness on the stand when the party's sole purpose in doing so is to present otherwise inadmissible evidence cloaked as impeachment." Appleton v. State, 740 N.E.2d 122, 125 (Ind. 2001) (internal citation and string citation omitted).

of self-defense. Griffith argued in the alternative that if his conviction was not reversed, his sentence should be revised under Indiana Appellate Rule 7(B).

The majority of the Court of Appeals determined that the proposed testimony of Brinson and Kennett would be inadmissible hearsay, and did not fall within a hearsay exception under Indiana Evidence Rule 803. Griffith v. State, 18 N.E.3d 625, 630 (Ind. Ct. App. 2014). Next, the court noted that the "colloquy between the court and Griffith's counsel does not reveal that the court categorically foreclosed the possibility of Griffith calling Darren as a witness . . . ." Id. Yet, the court went on to determine that under Indiana Evidence Rule 613(b), "it would have been improper for the court to admit extrinsic evidence from Brinson and Kennett of Darren's alleged prior inconsistent statements without Darren having been given the opportunity to explain or deny the inconsistent statements." Id. (string citation omitted). The court held that the trial court did not abuse its discretion in excluding the proposed testimony and Griffith was not denied the opportunity to impeach Darren's testimony or present a self-defense claim. Id. at 631. The court also held that Griffith's sentence was not inappropriate given the nature of the offense and his character. Id. at 632. Thus, Griffith's conviction and sentence were affirmed. Id.

Judge Barnes dissented from the majority's interpretation of Rule 613(b) and from its holding regarding whether the trial court abused its discretion in excluding the witnesses' testimonies. Id. at 633-34. Judge Barnes looked to federal and Indiana precedent and concluded that a party may be impeached with extrinsic evidence of a prior inconsistent statement, even if that party was not cross-examined on those statements. Id. Judge Barnes concluded that the trial court misapplied the law, that the trial court's exclusion of the witnesses' testimonies was an abuse of discretion, and the error was not harmless. Id. at 634-35. Thus, Griffith's conviction should be reversed. Id. at 635.

This Court accepted transfer, thereby vacating the Court of Appeals opinion. Griffith v. Sate, 23 N.E.3d 17 (table); Ind. Appellate Rule 58(A).

**Standard of Review**

The admission and exclusion of evidences rests within the sound discretion of the trial court, and we review the exclusion of evidence only for an abuse of discretion. Wilson v. State, 765 N.E.2d 1265, 1272 (Ind. 2002) (citations omitted). Even if a trial court errs in its evidentiary ruling, "we will not overturn the conviction if the error is harmless." Appleton v. State, 740 N.E.2d 122, 124 (Ind. 2001) (citing Ind. Trial Rule 61; Cooley v. State, 682 N.E.2d 1277, 1282 (Ind. 1997)). An error is harmless if "the probable impact of the evidence upon the jury is sufficiently minor so as not to affect a party's substantial rights." Appleton, 740 N.E.2d at 124 (citing Fleener v. State, 656 N.E.2d 1140, 1141-42 (Ind. 1995)).

In addition, a federal court's interpretation of the Federal Rules of Evidence is not binding upon this Court. Doe v. Shults-Lewis Child and Family Serv., Inc., 718 N.E.2d 738, 751 (Ind. 1999) (citation omitted). However, due to the similarity between the Indiana Rules of Evidence and the Federal Rules of Evidence, "federal case law interpreting the Federal Rules of Evidence may be of some utility . . . ." Id.

**Discussion**

### I.  Indiana Evidence Rule 613(b)

At the time of Griffith's trial, Indiana Evidence Rule 613(b) provided in pertinent part, "[e]xtrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require." Ind. Evid. Rule 613(b) (2012). This Court has affirmed a trial court ruling which excluded extrinsic evidence of a witness's prior inconsistent statement where the defense did not take the opportunity to cross-examine the witness about the alleged prior statement before seeking to

7

introduce extrinsic evidence of that statement. See Hilton v. State, 648 N.E.2d 361, 362 (Ind. 1995) (disapproved on other grounds by State v. Wilson, 863 N.E.2d 407, 409-10 (Ind. 2005)). However, this Court has never explicitly addressed whether Rule 613(b) requires a particular sequence for extrinsic evidence to be introduced in relation to giving the witness an opportunity to explain or deny the alleged prior statement. We take this opportunity to clarify our holding in Hilton and to embrace the federal approach to the admission of extrinsic evidence of a prior inconsistent statement under Rule 613(b).

In Hilton, the defendant was charged with murder, and the trial court excluded the testimony of a third person, whom Hilton claimed would have testified to overhearing a conversation in which another person took responsibility for the murder. 648 N.E.2d at 362. When Hilton had the opportunity to cross-examine the individual who allegedly took responsibility for the murder, Hilton did not ask about the prior statement. Id. The Court looked to Rule 613(b) and explained that because Hilton did not cross-examine the individual about the prior inconsistent statement, there was "no statement[] about the alleged conversation that might be inconsistent" with Hilton's witness's recollection. Id. Additionally, Hilton failed to submit an adequate offer of proof. Id. Because Hilton failed to do both of these things, the Court held that the trial court had not erred in excluding the extrinsic evidence proposed by Hilton. Id. Although the trial court was affirmed, the Court did not address the full scope of when Rule 613(b) permits the admission of extrinsic evidence. Due to this, our holding in Hilton is not determinative of the present issue.

Now, the Court has been presented with the opportunity to specifically address when extrinsic evidence may be admitted under Rule 613(b). We do not overrule the conclusion reached in Hilton affirming the trial court's exclusion of extrinsic evidence. However, we do seek to clarify that Hilton does not stand for the proposition that extrinsic evidence may *never* be admitted under Rule 613(b) before the witness is given an opportunity to explain or deny a prior inconsistent statement. Rather, we are inclined to follow the federal interpretation of Federal Evidence Rule 613(b), which affords greater flexibility to trial courts in the admission of evidence. This Court

similarly prefers an interpretation which would provide Indiana trial courts with flexibility in admitting extrinsic evidence.

In U.S. v. Della Rose, the Seventh Circuit acknowledged that "Rule 613(b) conditions the admissibility of a prior inconsistent statement on the witness being afforded the opportunity to explain or deny the statement." 403 F.3d 891, 903 (7th Cir. 2005). However, the opportunity to explain or deny the prior statement does not mean that the witness "must be given that opportunity *before* extrinsic evidence of the statement is admitted." Id. In Della Rose, the court clearly set out that the failure to cross-examine a witness about a prior statement did not prevent the defense from eliciting testimony about that prior statement from its own impeaching witness. Id. (string citation omitted).

Other federal circuits have also interpreted Rule 613(b) in this way. See U.S. v. Schnapp, 322 F.3d 564, 571 (8th Cir. 2003) ("The rule, on its face, does not require that the witness be cross-examined about the alleged prior inconsistent statement *before* that statement may be presented as impeachment evidence"); U.S. v. Young, 86 F.3d 944, 949 (9th Cir. 1996) (explaining that the court "expressly recognized that the foundational prerequisites of Rule 613(b) require only that the witness be permitted-*at some point*- to explain or deny the prior inconsistent statement") (citation omitted) (emphasis added); and Wammock v. Celotex Corp., 793 F.2d 1518, 1521-22 (11th Cir. 1986) (explaining, "[t]raditionally, prior inconsistent statements of a witness could not be proved by extrinsic evidence unless and until the witness was first confronted with the impeaching statement. Rule 613(b) modifies this approach, however, by merely requiring that the witness be provided an opportunity to explain the statement at some point in the proceedings" and "no particular sequence or timing" is required).

Since Hilton, the Indiana Court of Appeals has also addressed at what point extrinsic evidence of a prior inconsistent statement may be admitted for impeachment purposes under Rule 613(b). See Orr v. State, 968 N.E.2d 858, 862 (Ind. Ct. App. 2012). In Orr, the Court of Appeals acknowledged that Hilton upheld the trial court's exclusion of extrinsic evidence of a prior

inconsistent statement when the witness was not first cross-examined about the statement and given an opportunity to explain or deny that statement. Id. at 864 n.4. However, the court in Orr did not interpret Hilton to address the sequence upon which extrinsic evidence could be introduced under Rule 613(b). Id. Rather, Hilton was viewed only as upholding the judicial discretion afforded to trial courts under Rule 613(b) in admitting extrinsic evidence. As stated above, we agree that Hilton was not intended to set out a steadfast rule limiting the trial court's discretion under Rule 613(b). Thus, when faced with the question of whether Rule 613(b) required a specific sequence for the admission of extrinsic evidence, the Court of Appeals in Orr was free to look to other relevant precedent in reaching its decision.

In Orr, a shooting occurred and two people were killed. 968 N.E.2d at 860. A witness to the shooting testified at trial that she had only heard gunshots, but had not seen a gun or the altercation. Id. However, this was inconsistent with what the witness had told another individual the night of the shooting. Id. An offer of proof was made outside the presence of the jury regarding the proposed testimony of the prior inconsistent statement. Id. The trial court allowed the individual to testify before the jury regarding what the witness had said the night of the shooting. Id. at 862. The defendant challenged this ruling, arguing that the witness was not first confronted with the alleged statement and given the opportunity to explain or deny the statement. Id.

The Court of Appeals addressed this issue by first pointing out two specific phrases within Rule 613(b). Id. First, a witness is not required to *actually* explain or deny the prior inconsistent statement, but only must be "afforded an opportunity" to do so. Id. Second, the court is permitted to do what the "interests of justice otherwise require." Id. Although a witness should be given the opportunity to explain or deny the alleged statement, "the rule does not specify the timing of that opportunity." Id. The court embraced the federal approach and determined that the opportunity to explain or deny the prior statement does not mean that the witness "must be given that opportunity *before* extrinsic evidence of the statement is admitted." Id. (quoting Della Rose, 403 F.3d at 903). Moreover, trial courts are afforded wide discretion in permitting or excluding extrinsic evidence of a prior inconsistent statement by determining that "the interests of justice

10

otherwise require." Id. at 864. A variety of factors may influence the trial court's decision to allow or exclude such evidence. Id. at 865. The court in Orr determined that the trial court had not erred in admitting the extrinsic evidence. Id.

Consistent with the Federal approach and with our own Court of Appeals, we hold that under Indiana Evidence Rule 613(b), the requirement that a witness be given an opportunity to explain or deny a prior inconsistent statement may be afforded to that witness at any point during the proceedings. However, Rule 613(b) "does not supplant the traditional method of confronting a witness with his inconsistent statement prior to its introduction into evidence as the *preferred* method of proceeding." Wammock, 793 F.2d at 1522. This approach avoids the risk that a witness may become unavailable as the trial proceeds and consequently could not be recalled to explain or deny the prior statement. In addition, we recognize that the preferred approach may make it easier for a jury to understand the context of the intended impeachment.

Despite this preferred method, trial courts are still given broad discretion in excluding or admitting extrinsic evidence under Rule 613(b). We encourage trial courts to consider a variety of relevant factors in making the determination to admit or exclude extrinsic evidence, such as the availability of the witness, the potential prejudice that may arise from recalling a witness only for impeachment purposes, the significance afforded to the credibility of the witness who is being impeached, and any other factors that are relevant to the interests of justice.[5]

---

[5] To the extent that a trial court does exercise its discretion to admit extrinsic evidence outside of the preferred sequence, we advise that trial courts remain mindful that if the witness is later unavailable to explain or deny that prior statement, the court must be prepared to provide a remedy. A suitable remedy may be granting a motion to strike the testimony of the impeaching witness and giving an appropriate instruction to the jury. On the other hand, if the opposing party simply fails to recall the witness without any showing of unavailability, such a remedy may not be warranted. Likewise, when the opposing party fails to show the witness's unavailability, that party should also not get the windfall of being able to appeal

We next analyze whether the trial court in the current case abused its discretion under Rule 613(b) by excluding the testimony of Brinson and Kennett prior to giving Darren the opportunity to explain or deny the alleged prior inconsistent statement.[6]

## II. Exclusion of Griffith's Proposed Extrinsic Evidence

Griffith argues that the testimonies of Brinson and Kennett should have been admitted because their testimonies were crucial to his self-defense claim. Both witnesses were called outside the presence of the jury and testified that Darren had told each of them on different occasions that he had hit Griffith with a two by four before he was stabbed. Griffith does not assert that this testimony fits within a hearsay exception but only argues that it should have been admitted for impeachment purposes under Rule 613(b).

We conclude that the trial court did not abuse its discretion in excluding this testimony. First, it was never established on the record whether Darren was still available to be recalled as a witness to either explain or deny the alleged prior statements. Second, although Griffith attempts to emphasize the importance of attacking Darren's credibility, the significance of Darren's credibility is decreased due to two other eyewitnesses who corroborated Darren's testimony that Griffith was the initial aggressor. Summer, the defendant's own daughter, and a neighbor both testified that Griffith attacked Darren without provocation. Thus, this was not a case where the

---

on the grounds that extrinsic evidence was admitted without the witness being given an opportunity to explain or deny that statement. We remain confident that our trial court judges, along with the assistance of engaged trial counsel, are fully capable of navigating the nuances that each case may present.

[6] For the purpose of this analysis, we assume that the trial court completely foreclosed the defendant's opportunity to introduce the extrinsic evidence of Brinson and Kennett's testimonies. However, as noted by the Court of Appeals and from what is apparent in the record, it is unclear whether a final ruling was ever made on this issue. Griffith never attempted to call these witnesses or Darren after the jury returned.

jury was faced with only the victim's word against the defendant's. Lastly, Griffith provided no explanation for why Darren was not cross-examined regarding these prior statements when Griffith was afforded the full opportunity to do so. The trial court was given no reason to believe that the failure to cross-examine Darren was part of a specific trial strategy, nor was the trial court provided a basis for finding that the interests of justice otherwise required the admission of the proposed extrinsic evidence. Thus, we hold that the trial court did not abuse its discretion in excluding extrinsic evidence of Darren's prior inconsistent statements.

Although the trial court properly exercised its discretion in excluding this evidence, we also seek to emphasize that it would not have been err to allow Darren to be recalled as a witness and to be questioned about the alleged prior inconsistent statement. See Della Rose, 403 F.3d at 903 (explaining that even if the witness was not asked about the prior inconsistent statement on cross-examination, the prosecution could still have recalled the witness to the stand and asked about the statement at that time). We acknowledge that Appleton and Griffin provide that "a party is forbidden from placing a witness on the stand when the party's sole purpose in doing so is to present otherwise inadmissible evidence cloaked as impeachment." 740 N.E.2d at 125; See also Griffin, 754 N.E.2d at 904. However, in this context, the witness would have been recalled for the purpose of allowing that witness to explain or deny a prior inconsistent statement. Thus, this rule would not be controlling over a trial court's discretion to allow a witness to be recalled.

Furthermore, even if the trial court in the present case did err in excluding the testimonies, we would conclude that the error was harmless. Although Griffith claims that this testimony was significant to prove his claim of self-defense, it does not appear that a self-defense argument was ever developed at trial. Griffith did not assert in opening statements that he had acted in self-defense. During the State's presentation of its case, Griffith did not cross-examine any witness regarding the possibility that Griffith acted in self-defense. Griffith also never proposed a final jury instruction on self-defense. Only a brief reference was made in closing arguments suggesting

13

that Griffith had only defended himself.[7]  Given the absence of argument on self-defense, it does not appear that self-defense was the theory of the defense's case.  Most significantly, the jury would not have been permitted to use the testimonies of Brinson and Kennett as substantive evidence.  Under Rule 613(b), their testimonies would have been admitted for impeachment purposes only, and Griffith concedes that there is not an applicable hearsay exception that would allow their testimonies to have been admitted for substantive use.  As such, the exclusion of Brinson and Kennett's testimonies would have been harmless error.

## Conclusion

We hold that under Indiana Evidence Rule 613(b), extrinsic evidence of a prior inconsistent statement may be admitted before or after a witness is given the opportunity to explain or deny the alleged statement.  While the preferred method remains that the witness be confronted with the statement prior to the admission of extrinsic evidence, the trial court has wide discretion in making this evidentiary ruling.  Several factors may properly sway the trial court to admit or deny extrinsic evidence given the circumstances of the case.  To the extent that our prior holding in Hilton could be read to require trial courts to admit extrinsic evidence under Rule 613(b) in a specific sequence, we clarify that Hilton upheld the discretion of the trial court under Rule 613(b) without setting out a requirement for the sequence in which extrinsic evidence must be admitted.  In accordance with that interpretation, the trial court did not err in excluding the proposed extrinsic evidence of a prior inconsistent statement offered by Griffith.  Griffith's conviction and sentence are affirmed.

Rush, C.J., Dickson, Rucker, and Massa, J.J., concur.

---

[7] Defense counsel stated, "[i]f someone attacks you with a weapon, you have the right to defend yourself with a weapon and that's not a crime."  (Tr. at 341.)

14