**Christopher A. BRYANT, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 45A03–1101–CR–11.

Court of Appeals of Indiana.

Dec. 20, 2011.

## OPINION

BRADFORD, Judge.

### CASE SUMMARY[1]

Appellant–Defendant Christopher Bryant appeals from his convictions of and sentences for two counts of Class A felony Dealing in a Narcotic Drug,[2] Class A misdemeanor Resisting Law Enforcement,[3] and Class A misdemeanor Marijuana Possession[4] and his admission that he is a Habitual Substance Offender.[5] Bryant raises the following issues on appeal:

I. Whether he received ineffective assistance of trial counsel due to his attorney's failure to challenge a search conducted at a police station;

II. Whether the trial court abused its discretion in denying his motion for a mistrial after certain statements alleged to have been made in violation of *Miranda* were admitted; and

III. Whether the trial court abused its discretion in sentencing him.

We affirm.

### FACTS AND PROCEDURAL HISTORY

On September 1, 2010, Hammond Police outfitted a confidential informant ("CI") with an audio-visual recorder, provided him with $150 of "buy" money, and directed him to arrange a drug deal with a person known only to the police and the CI

Scott L. King, Merrillville, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ryan D. Johaningsmeier, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

1. We heard oral argument in this case on November 29, 2011, at Lawrence North High School in Indianapolis. We wish to extend our gratitude for the hospitality of the students, staff, and faculty of Lawrence North and commend counsel for the high quality of their oral advocacy.

2. Ind.Code § 35–48–4–1 (2010). The charges are class A felonies by virtue of the fact that the transaction took place within 1000 feet of school property, which is not disputed. *See* Ind.Code § 35–48–4–1(b)(3)(B)(i).

3. Ind.Code § 35–44–3–3 (2010).

4. Ind.Code § 35–48–1–1 (2010).

5. Ind.Code § 35–50–2–8 (2010).

as "Prophet," but who later turned out to be Bryant. The CI telephoned Bryant, who arrived at the CI's residence approximately thirty minutes later. The CI approached Bryant's vehicle and purchased $130 worth of heroin, leaving him with $20 of buy money left. The CI returned to his residence and gave 0.54 grams of heroin and the remaining buy money to police.

Hammond Police Detective Marc Ferry followed Bryant's vehicle when it pulled away. Eventually, Bryant failed to signal a turn, and Detective Ferry activated his lights and siren to initiate a stop. Detective Ferry approached the vehicle, and, after knocking on the driver's side window with his flashlight, asked twice for Bryant's identification and vehicle registration. When Bryant asked why he had been stopped, Detective Ferry said, "Well, for starters because of the loud music." Tr. p. 67. At this point, Bryant drove off slowly.

Detective Ferry returned to his vehicle and pursued Bryant, who leaned "hard to the right" momentarily before stopping in an empty lot after approximately two blocks. Tr. p. 69. Detective Ferry had witnessed others lean and pull away as Bryant had done and believed that "people when they pull away like that, they are buying time, they're trying to hide something." Tr. p. 72. Detective Ferry testified that "[a]t that time, [Bryant was being arrested] for resisting law enforcement." Tr. p. 70. When Bryant was taken into custody, Detective Ferry received permission from his supervisor to conduct a strip search. When two officers forcibly bent Bryant over, Detective Ferry recovered a "clear plastic bag which was slightly torn opened [sic], containing a green, leafy substance" that was determined to be 2.14 grams of marijuana from between Bryant's buttocks. Tr. p. 73. Bryant then told Detective Ferry that he "got it from the patrol car that transported him into the station." Tr. p. 93. Bryant had not been read his *Miranda* rights at the time of the search. Detective Ferry also recovered the $130 of buy money from Bryant's pants. Police identified "Prophet" as Bryant, and he was eventually released.

On September 7, 2010, police again fitted the CI with an audio-visual recorder, provided him with $200 in buy money, and again instructed him to arrange a drug deal with Bryant. The CI telephoned Bryant and told him that he wanted to purchase one gram of heroin. When Bryant arrived at the CI's residence, the CI approached the vehicle and purchased $230 worth of heroin for $200 from Bryant. The CI returned to his residence and gave police officers the 0.93 grams of heroin he had just purchased. Police followed Bryant's vehicle as he drove away and arrested him inside a store in Hammond. The next day, the CI selected Bryant from a photo array and identified him as the person from whom he had purchased heroin on September 1 and 7, 2010. Eventually, the State charged Bryant with two counts of Class A felony dealing in a narcotic drug, Class A misdemeanor resisting law enforcement, Class A misdemeanor marijuana possession, and with being a habitual substance offender.

Following trial, a jury found Bryant guilty of two counts of Class A felony dealing in a narcotic drug, Class A misdemeanor resisting law enforcement, and Class A misdemeanor marijuana possession. Bryant admitted that he was a habitual substance offender. The trial court sentenced Bryant to forty-two years for each of his two dealing in a narcotic drug convictions, one year for resisting law enforcement, and one year for marijuana possession, and with being a habitual substance offender, all sentences to be served concurrently. The trial court enhanced

Bryant's sentence three years by virtue of his habitual substance offender status. The trial court found, as aggravating circumstances, Bryant's criminal history, that leniency in the past had not deterred his criminal behavior, and that he is in need of correctional and rehabilitative treatment that can best be provided by commitment to a penal facility. The trial court found no mitigating circumstances.

## DISCUSSION AND DECISION

### I. Whether Bryant Received Ineffective Assistance of Trial Counsel

█ Bryant contends that his trial counsel was ineffective for failing to file a motion to suppress evidence of the marijuana found during what he contends was an illegal strip search. We review claims of ineffective assistance of counsel based upon the principles enunciated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):

> [A] claimant must demonstrate that counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms, and that the deficient performance resulted in prejudice. Prejudice occurs when the defendant demonstrates that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." A reasonable probability arises when there is a "probability sufficient to undermine confidence in the outcome."

*Grinstead v. State,* 845 N.E.2d 1027, 1031 (Ind.2006) (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052). Because an inability to satisfy either prong of this test is fatal

to an ineffective assistance claim, this court need not even evaluate counsel's performance if the petitioner suffered no prejudice from that performance. *Vermillion v. State,* 719 N.E.2d 1201, 1208 (Ind.1999).

Bryant argues that the strip search which yielded the marijuana was unreasonable and therefore violated Article I, Section 11 of the Indiana Constitution.[6] Consequently, Bryant contends that his trial counsel was ineffective for failing to file a motion to suppress on that basis. Article I, Section 11 reads:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

"Although this language tracks the Fourth Amendment [of the United States Constitution] verbatim, Indiana has explicitly rejected the expectation of privacy as a test of the reasonableness of a search or seizure." *Litchfield v. State,* 824 N.E.2d 356, 359 (Ind.2005). "The legality of a governmental search under the Indiana Constitution turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances." *Id.* (citing *Moran v. State,* 644 N.E.2d 536, 539 (Ind.1994)). "We believe that the totality of the circumstances requires consideration of both the degree of intrusion into the subject's ordinary activities and the basis upon which the officer selected the subject of the search or seizure." *Id.* at 360.

█ "[A] police officer may conduct a warrantless search of a person if the search is incident to a lawful arrest." *Ed-*

---

6. Bryant does not make a separate argument under the Fourth Amendment to the United   States Constitution.

wards v. State, 759 N.E.2d 626, 629 (Ind. 2001) (citing *Townsend v. State*, 460 N.E.2d 139, 141 (Ind.1984)). "In such situations, the search and the arrest must be 'substantially contemporaneous,' and the search must be confined to the immediate vicinity of the arrest." *Id.* (quoting *Townsend*, 460 N.E.2d at 141). "The requirement of a contemporaneous search has been interpreted liberally, however, and this Court has validated searches that do not occur until the arrestee arrives at a law enforcement facility, as long as the items searched are 'found on the person of an arrestee' or are 'immediately associated with his person.'" *Id.* (quoting *Chambers v. State*, 422 N.E.2d 1198, 1203 (Ind.1981)).

As for the scope of the search, "[t]he United States Supreme Court has held that once a lawful arrest has been made, authorities may conduct a 'full search' of the arrestee for weapons or concealed evidence." *Id.* (quoting *U.S. v. Robinson*, 414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973)). "No additional probable cause for the search is required, and the search incident to arrest may involve a relatively extensive exploration of the person." *Id.* (citation omitted). On the other hand, the Indiana Supreme Court has held that "[w]e do not believe that routine, warrantless strip searches of misdemeanor arrestees, even when incident to lawful arrests, are reasonable as both Article I, Section 11 of our state constitution and the Fourth Amendment to the federal constitution require." *Id.*

Bryant's argument is essentially that the police had no justification for conducting a strip search because he was arrested for resisting law enforcement, a misdemeanor that does not, without more, give rise to a reasonable likelihood of the discovery of contraband. In *Edwards*, the Indiana Supreme Court stated that, under Article I, Section 11, "before jail officials may conduct warrantless strip searches of misde-

meanor arrestees detained awaiting the posting of bond, those officials must have a reasonable suspicion that the arrestees are concealing weapons or contraband." *Id.* at 630.

█ Bryant's case, however, does not fit within the above rule formulated by the *Edwards* court. Detective Ferry did, in fact, testify that Bryant was arrested for resisting law enforcement. Without more, Bryant might have a strong argument that the fruits of the strip search were suppressible. There is more, however. The suspicion that can justify a strip search need not be based on the crime for which one is being arrested, and "irrespective of the offense, the circumstances surrounding the arrest, rather than the offense itself, may give rise to a reasonable suspicion, and if so the search is justified." *Id.* First, while Bryant was ostensibly arrested for resisting law enforcement, police had probable cause at the time to believe that he had also committed dealing in a narcotic drug, a major felony. Bryant points to no Indiana case, and we are aware of none, holding that the arrest of a suspected felon does not justify a strip search. Second, Detective Ferry testified that Bryant slowly drove away from him initially and leaned hard to the right as he drove, actions that in Detective Ferry's experience indicated a person attempting to conceal something. So, even if police had not suspected Bryant of committing a major felony, there was reasonable suspicion that he was concealing contraband. Police were justified in strip searching Bryant, and his trial counsel was therefore not ineffective for failing to move to suppress the fruits of that search.

## II. Whether the Trial Court Abused its Discretion in Denying Bryant's Mistrial Motion

Bryant contends that the trial court abused its discretion in denying his mistri-

al motion made following the State's attempt to elicit allegedly inadmissible testimony from Detective Ferry regarding Bryant's statements during the strip search.

We review a trial court's decision to deny a mistrial for abuse of discretion because the trial court is in "the best position to gauge the surrounding circumstances of an event and its impact on the jury." *McManus v. State*, 814 N.E.2d 253, 260 (Ind.2004). A mistrial is appropriate only when the questioned conduct is "so prejudicial and inflammatory that [the defendant] was placed in a position of grave peril to which he should not have been subjected." *Mickens v. State*, 742 N.E.2d 927, 929 (Ind. 2001) (quoting *Gregory v. State*, 540 N.E.2d 585, 589 (Ind.1989)). The gravity of the peril is measured by the conduct's probable persuasive effect on the jury. *Id.*

*Pittman v. State*, 885 N.E.2d 1246, 1255 (Ind.2008).

▮▮▮▮ Bryant contends that he was placed in great peril by the admission of an inadmissible statement he made following the discovery of marijuana on the basis that it was obtained in violation of *Miranda.* The admissibility of evidence is within the sound discretion of the trial court. *Curley v. State*, 777 N.E.2d 58, 60 (Ind.Ct.App.2002), *trans. denied.* We will reverse a trial court's decision on the admissibility of evidence only upon a showing of an abuse of that discretion. *Id.* An abuse of discretion may occur if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Id.* The Court of Appeals may affirm the trial court's ruling if it is sustainable on any legal basis in the record, even though it was not the reason enunciated by the trial court. *Moore v.*

*State*, 839 N.E.2d 178, 182 (Ind.Ct.App. 2005), *trans. denied.* We do not reweigh the evidence, and consider the evidence most favorable to the trial court's ruling. *Hirshey v. State*, 852 N.E.2d 1008, 1012 (Ind.Ct.App.2006), *trans. denied.*

▮▮▮▮ When an accused is subjected to custodial interrogation, the State may not use statements stemming from the interrogation unless it demonstrates the use of procedural safeguards to secure the accused's privilege against self-incrimination. *Davies v. State*, 730 N.E.2d 726, 733 (Ind.Ct.App.2000) (citing *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)), *trans. denied.* The *Miranda* warnings apply only to custodial interrogation because they are meant to overcome the inherently coercive and police dominated atmosphere of custodial interrogation. *Id.* When a subject is in custody, *Miranda* requires that he be informed of the right to the presence and advice of counsel during custodial interrogation by the police, of the right to remain silent, and that any statement he makes may be used as evidence against him. *Wright v. State*, 766 N.E.2d 1223, 1229 (Ind.Ct.App.2002).

"Under *Miranda*, 'interrogation' includes express questioning and words or actions on the part of the police that the police know are reasonably likely to elicit an incriminating response from the suspect." *White v. State*, 772 N.E.2d 408, 412 (Ind.2002) (citing *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980); *Loving v. State*, 647 N.E.2d 1123, 1126 (Ind.1995)). "Volunteered statements do not amount to interrogation." *Id.* (citing *Hopkins v. State*, 582 N.E.2d 345, 348 (Ind.1991)).

We need not address the merits of Bryant's claim. Even if one assumes that Detective Ferry made comments likely to elicit an incriminating response from

Bryant, the question is whether Bryant was placed in any grave peril by the State's presentation of Bryant's response at trial. While Bryant's statement about finding the marijuana in the police vehicle on the way to the station, essentially an admission that he was voluntarily in possession of it, was incriminating, it was not nearly as incriminating as the fact that the marijuana was found between his buttocks. Bryant's statement was essentially cumulative evidence under the circumstances of this case, the wrongful admission of which is harmless. "In Indiana, it is well settled that the introduction of otherwise inadmissible evidence that is merely cumulative is not prejudicial error." *King v. State*, 460 N.E.2d 947, 950 (Ind.1984). Even if Bryant's statement were wrongfully admitted, it did not place him in great peril to which he should not have been subjected.

### III. Whether the Trial Abused its Discretion in Sentencing Bryant

Bryant contends that the trial court abused its discretion in finding, as aggravating circumstances, that prior lenient treatment had not deterred Bryant and that he was in need of correctional and rehabilitative treatment because those circumstances were allegedly derivative of his criminal history. Bryant also contends that the trial court abused its discretion in refusing to find, as a mitigating circumstance, that his crimes neither caused nor threatened serious harm to persons or property. Under our current sentencing scheme, "the trial court must enter a statement including reasonably detailed reasons or circumstances for imposing a particular sentence." *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind.2007), *modified on other grounds on reh'g*, 875 N.E.2d 218 (Ind.2007). We review the sentence for an abuse of discretion. *Id.* An abuse of discretion occurs if "the decision is clearly against the logic and effect of the facts and circumstances." *Id.*

A trial court abuses its discretion if it (1) fails "to enter a sentencing statement at all[,]" (2) enters "a sentencing statement that explains reasons for imposing a sentence—including a finding of aggravating and mitigating factors if any—but the record does not support the reasons," (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration," or (4) considers reasons that "are improper as a matter of law." *Id.* at 490–91.

Here, even if the trial court did abuse its discretion in the ways claimed by Bryant, that error can only be considered harmless. In cases where the trial court has abused its discretion, we will remand for resentencing only "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Id.* at 491. Bryant, who was twenty-nine when he committed the instant offenses, has an extensive criminal history, to say the least. Beginning in 2000, Bryant has six prior misdemeanor and five prior felony convictions, most of which are related to illegal drugs. Of note, Bryant was convicted of manufacturing/delivering controlled substances in Illinois in 2004 and sentenced to three years of incarceration. After being paroled in 2005, Bryant was convicted of unlawful possession of a weapon by a felon, possession of a controlled substance, and manufacturing/delivering cannabis and received a six-year sentence. Moreover, beginning in 1997, it appears that Bryant has been arrested a total of twenty-four times. Bryant's extensive history of criminal convictions, amassed in approximately ten years despite being incarcerated much of that time, renders any error the trial court

may have made harmless. In other words, we can say with confidence that Bryant would have received the same enhanced sentence in any event.

The judgment of the trial court is affirmed.

RILEY, J., and DARDEN, J., concur.