## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 03 2015, 10:56 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Frederick Vaiana<br>Voyles Zahn & Paul<br>Indianapolis, Indiana | Gregory F. Zoeller<br>Attorney General of Indiana<br><br>Jodi Kathryn Stein<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Ronald C. Weyland,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | June 3, 2015<br><br>Court of Appeals Case No.<br>48A04-1409-CR-446<br><br>Appeal from the Madison Circuit Court<br>The Honorable Dennis D. Carroll, Judge<br>Cause No. 48C06-1306-FA-1227 |

**Bailey, Judge.**

# Case Summary

After a jury trial, Ronald C. Weyland ("Weyland") was convicted of Attempted Child Molesting, as a Class A felony;[1] Child Molesting, as a Class A felony;[2] and Child Molesting, as a Class C felony.[3] He now appeals.

We affirm in part, reverse in part, and remand.

# Issues

Weyland raises two issues for our review, which we restate as:

1. Whether there was sufficient evidence to sustain his convictions; and
2. Whether the trial court abused its discretion when it limited the scope of his cross-examination of a witness.

# Facts and Procedural History

Weyland had a daughter, E.K., with Amy K. ("Amy"). E.K. was born on January 20, 2008. Weyland and Amy did not live together, and Amy had primary custody of E.K. Weyland, who lived in Pendleton, and Amy had arranged for E.K. to spend two days each week with Weyland. Weyland also provided childcare for E.K. on nights when Amy needed to work late.

---

[1] Ind. Code §§ 35-42-4-3(a)(1) & 35-41-5-1.

[2] I.C. § 35-42-4-3(a)(1).

[3] I.C. § 35-42-4-3(b).

[5] E.K. had a room in Weyland's home, where Weyland lived with his mother, Ivana, and his older daughter and E.K.'s half-sister, Makayla. Sometimes E.K. slept in her own bed; sometimes she slept with Weyland in his bed.

[6] Weyland, Ivana, and Makayla each helped care for E.K., including bathing E.K. and helping E.K. shower. On a number of occasions, Weyland would shower naked with E.K., and would wash E.K.'s genitals. E.K. expressed reluctance to shower when Ivana or Makayla showered her; when Weyland would shower her, however, E.K. would scream, cry, and throw herself on the floor.

[7] Around December 25, 2012, Weyland had a number of relatives staying at his home for the Christmas holiday. E.K., who was four years old at the time, also stayed with Weyland for five or six nights.

[8] Amy picked E.K. up from Weyland's house on the evening of December 27, 2012. While Amy drove home, she and E.K. were talking. At some point during the conversation, E.K.'s tone of voice changed, and she told Amy that Weyland had touched her inappropriately. When Amy pulled the car over and called her mother ("Maternal Grandmother"), E.K. protested to Amy that it was "daddy's secret and you'll go to jail." Tr. at 143.

[9] Amy drove to Community Hospital in Anderson, where a sexual assault examination was performed on E.K. The following day, a forensic interviewer working for the Indiana Department of Child Services interviewed E.K.

During the interview, E.K. stated that Weyland had touched her genitals with a picture-hanging nail and had placed his penis on her mouth.

[10] A police investigation ensued based upon E.K.'s statements. On June 21, 2013, Weyland was charged with two counts of Attempted Child Molesting, as Class A felonies, and Child Molesting, as a Class C felony. The State also filed a notice of intent to seek a Habitual Offender enhancement.

[11] On August 5, 2014, the State amended the charges against Weyland, adding to the existing charges an additional charge of Child Molesting, as a Class A felony.

[12] A jury trial was conducted on August 6 and 7, 2014. During the trial, the State dismissed one count of Attempted Child Molesting, as a Class A felony.

[13] Also during the trial, Weyland sought to introduce extrinsic evidence in the form of testimony from Amy concerning statements E.K. had made, which statements Weyland contended were inconsistent with prior statements of E.K. The State objected, and after an offer of proof the trial court ruled those statements inadmissible under Evidence Rules 613 and 403.

[14] At the close of the trial, the jury found Weyland guilty of the three remaining charges: Attempted Child Molesting, as a Class A felony; Child Molesting, as a Class A felony; and Child Molesting, as a Class C felony.

[15] A sentencing hearing was conducted on September 8, 2014. During the hearing, the trial court entered judgments of conviction against Weyland. At

the end of the hearing, the court sentenced Weyland to forty-five years imprisonment for each of the two Class A felony-level convictions, and to six years imprisonment for the Class C felony-level conviction. The trial court ran the sentences concurrent with one another, yielding an aggregate term of imprisonment of forty-five years.

[16] This appeal ensued.

# Discussion and Decision

## Sufficiency of the Evidence

[17] On appeal, Weyland first contends that there was insufficient evidence to convict him of Attempted Child Molesting and Child Molesting, as Class A felonies, and of Child Molesting, as a Class C felony.

[18] Our standard of review in challenges to the sufficiency of evidence is well settled. We consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess the credibility of witnesses or reweigh evidence. *Id.* We will affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id.* (quoting *Jenkins v. State*, 726 N.E.2d 268, 270 (Ind. 2000)). "The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict." *Id.* at 147 (quoting *Pickens v. State*, 751 N.E.2d 331, 334 (Ind. Ct. App. 2001)).

[19] To convict Weyland of Attempted Child Molesting, as a Class A felony, as charged, the State was required to prove beyond a reasonable doubt that Weyland, being at least twenty-one years old, attempted to commit Child Molesting, that is, to perform or submit to sexual intercourse or criminal deviate conduct with E.K., a child under fourteen years of age, by engaging in a substantial step toward committing the crime of child molesting, namely, attempting to place his penis in E.K.'s mouth. *See* I.C. §§ 35-42-4-3(a)(1) & 35-41-5-1; App'x at 108. There is sufficient evidence of a substantial step toward commission of a crime based upon taking an action, the "natural and usual sequence of which" would lead to commission of a completed offense. *Boling v. State*, 982 N.E.2d 1055, 1057 (Ind. Ct. App. 2013).

[20] The evidence that favors the judgment as to Attempted Child Molesting, as a Class A felony, is that Weyland put his penis on or near E.K.'s mouth for "about three minutes" according to E.K.'s testimony, Tr. at 129, at least long enough for E.K. to testify at trial that Weyland's penis was "squishy" or "squishy hard." Tr. at 117. The jury was within its ambit to conclude that the "natural and usual sequence" of placing a penis near another person's mouth is to engage in oral sex. *Boling*, 982 N.E.2d at 1057. To the extent Weyland contends he did not use any force or that touching his penis to E.K.'s mouth was "incidental" and "nothing that rises to the level of deviate sexual conduct," Appellant's Br. at 10, we regard such argument as an invitation to reweigh evidence, which we will not do. *Drane*, 867 N.E.2d at 146. We accordingly affirm his conviction for Attempted Child Molesting, as a Class A felony.

Weyland also argues that there was insufficient evidence to sustain his conviction for Child Molesting, as a Class A felony. To convict Weyland of Child Molesting, as a Class A felony, as charged, the State was required to prove beyond a reasonable doubt that Weyland, being at least twenty-one years old, performed or submitted to deviate sexual conduct with E.K., a child of under fourteen years of age, by inserting an object into the sex organ or anus of E.K. *See* I.C. § 35-42-4-3(a)(1); App'x at 109. On this count, Weyland argues that there was insufficient evidence that he actually inserted an object—here, a picture-hanging nail—into E.K.'s vagina or anus. That is, Weyland argues there was insufficient evidence to satisfy the requirement of penetration necessary to sustain a conviction for criminal deviate conduct or sexual intercourse, as required by the charging statute.

Our supreme court has emphasized that "proof of the slightest penetration is enough to support a conviction." *Spurlock v. State*, 675 N.E.2d 312, 315 (Ind. 1996). Detailed anatomical descriptions of penetration are unnecessary to sustain a conviction. *Id.* However, in *Spurlock*, the Indiana Supreme Court concluded there was insufficient evidence of penetration. In particular, the *Suprlock* Court observed that the victim in that case testified that "Spurlock's penis touched her vagina," but never testified that "it penetrated and went inside, and explicitly said she did not know whether that occurred." *Id.* Spurlock's victim also testified that "her vagina was used to go to the bathroom as well as to have intercourse, demonstrating only a generalized understanding of the term." *Id.*

[23] The evidence that favors the judgment comes, again, in the form of E.K.'s testimony. E.K. identified Weyland's "middle part" as being what he used to "go potty," Tr. at 115, and demonstrated knowledge generally that her own "middle part" or "bottom" should not be touched. Tr. at 112. E.K. testified that Weyland pulled down her pants and underwear and used a nail to touch her "middle part." Tr. at 113. This "hurt a little bit." Tr. at 114. E.K. testified that Weyland touched the "[o]utside because daddy still loves me" and "didn't want it to hurt me that much." Tr. at 114. Both upon direct and cross examination, E.K. testified only that Weyland had touched her genitalia on the "outside." Tr. at 114, 129. And while E.K. was examined by Holly Renz ("Renz"), a Sexual Assault Nurse Examiner, that examination provided no probative evidence as to whether any penetration had occurred.

[24] Based upon this, even viewed in a light most favorable to the judgment, we cannot conclude that there was sufficient evidence of penetration to convict Weyland of Child Molesting, as a Class A felony. We accordingly reverse the trial court and, on remand, instruct the trial court to vacate Weyland's conviction for Child Molesting, as a Class A felony.

[25] We now turn to the last of Weyland's three convictions. To convict Weyland of Child Molesting, as a Class C felony, as charged, the State was required to prove beyond a reasonable doubt that Weyland performed or submitted to any fondling or touching with E.K., a child then under fourteen years of age, with the intent to arouse or satisfy either Weyland's or E.K.'s sexual desires. *See* I.C. § 35-42-4-3(b); App'x at 109.

Here, Weyland argues that there was insufficient evidence of his intent to arouse or satisfy his or E.K.'s sexual desires. Weyland observes that he, Ivana, and Makayla all bathed E.K., including washing her genital area. Our review of the record, however, reveals that only Weyland showered with E.K. while both were nude. Moreover, Makayla testified that while E.K. would show reluctance to shower when prompted by Ivana or Makayla, E.K. would throw herself on the floor and scream when Weyland took her to shower. And while Weyland's touching of the outside of E.K.'s genitalia with a nail did not amount to Child Molesting, as a Class A felony, Weyland's purposive removal of E.K.'s pants and touching of her genital area is sufficient evidence to sustain the Class C felony conviction Weyland also challenges.

We conclude that there was sufficient evidence from which a reasonable jury could conclude that Weyland committed Child Molesting, as a Class C felony. We accordingly affirm this conviction.

## Admissibility of Evidence

Weyland also contends that the trial court abused its discretion and thereby committed reversible error when it denied his efforts to introduce extrinsic evidence of E.K.'s prior inconsistent statements, which evidence was to take the form of Amy's testimony. [4]

---

[4] Weyland frames this initially as a constitutional question, referring to the confrontation provisions of the U.S. and Indiana constitutions. His substantive argument deals exclusively with the effect of Evidence Rules

[29] We review a trial court's rulings on the admissibility *vel non* of evidence for an abuse of discretion. *Orr v. State*, 968 N.E.2d 858, 860 (Ind. Ct. App. 2012). An abuse of discretion occurs when the trial court's decision is contrary to the facts and circumstances before it, or when the court misinterprets the law. *Bryant v. State*, 959 N.E.2d 315, 321 (Ind. Ct. App. 2011). Even where a trial court abuses its discretion, however, we will not reverse the judgment if the error is harmless, that is, if the decision had no prejudicial effect on the substantial rights of the parties. Ind. Trial Rule 61.

[30] At trial, Weyland sought under Evidence Rules 613 and 403 to obtain extrinsic evidence that E.K. had made prior statements to Amy that were inconsistent with E.K.'s trial testimony. The court denied Weyland's efforts to cross-examine Amy for these purposes. Evidence Rule 613 governs impeachment of witnesses through prior statements:

> (a) Showing or Disclosing the Statement During Examination. When examining a witness about the witness's prior statement, a party need not show it or disclose its content to the witness. But the party must, on request, show it or disclose its contents to an adverse party's attorney.

> (b) Extrinsic Evidence of a Prior Inconsistent Statement. Extrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires. This subdivision (b) does not apply to an opposing party's statement under Rule 801(d)(2).

613 and 403 and applicable case law, however. To the extent Weyland contends there was error of constitutional dimension, then, that contention is waived. *See* Ind. Appellate Rule 46(A)(8)(a).

Evidence Rule 403 provides, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence."

[31]  The State objected to Weyland's efforts to introduce extrinsic evidence in the form of Amy's testimony, contending that Weyland had failed to lay a proper foundation because he had not confronted E.K. with her alleged prior inconsistent statements. *See Orr*, 968 N.E.2d at 863 (stating that the preferred method of introducing extrinsic evidence under Rule 613 is by confronting a witness before offering extrinsic evidence). The trial court observed that Rule 613 permitted admission of extrinsic evidence even absent an opportunity for the witness to address prior inconsistent statements when "justice so requires," Evid. R. 613(b), and opined that the interests of justice might so require where a witness was especially young like E.K. *See Orr*, 968 N.E.2d at 864-65 (observing that trial courts have discretion to admit extrinsic evidence for impeachment of a witness under Evid. R. 613).

[32]  Accordingly, prior to a final ruling, the trial court heard Weyland's offer of proof:

> Q:   [Amy], over the course of the last year and half is it fair to say that [E.K.] has said different things at different times about what her father did to her?
>
> A:   Yes.

Tr. at 193. The State posed several follow-up questions:

Q: You stated that [E.K.] has said different things at different times, the substance of which, has that remained the same?

A: Yes, just yes, she just disclosed more as time has gone on, her story hasn't changed.

Q: She's just disclosed more?

A: Yes, things that she had originally disclosed to only DCS, you know, she disclosed to me now. She just elaborated more. There hasn't been…

Q: She's just given you more information than what she did originally in the car?

A: Yes.

Tr. at 193-94. When asked by the trial court whether he had further questions to ask as part of the offer of proof, Weyland's counsel said, "No, Judge, that's it." Tr. at 194.

[33] Based upon this record, and assuming without deciding there was any error in the trial court's decision not to permit this examination of Amy before the jury, we cannot conclude that Weyland was prejudiced by the trial court's decision not to admit such testimony. The proffered testimony did nothing to establish that E.K. had made significant inconsistent statements, let alone statements that might have substantially undermined E.K.'s testimony. We accordingly conclude that Weyland has failed to establish that he was prejudiced by any error on the part of the trial court, even assuming the trial court's ruling was erroneous.

# Conclusion

[34]     There was sufficient evidence to sustain Weyland's convictions for Attempted Child Molesting, as a Class A felony, and Child Molesting, as a Class C felony. Concluding there was insufficient evidence to support Weyland's conviction for Child Molesting, as a Class A felony, we accordingly reverse the trial court. Finding as harmless any error in the trial court's limitation of Weyland's examination of a witness, we leave undisturbed Weyland's two remaining convictions, but remand with instructions to vacate Weyland's conviction for Child Molesting, as a Class A felony.

[35]     Affirmed in part, reversed in part, and remanded.

Riley, J., and Barnes, J., concur.