## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 06 2019, 8:33 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Elizabeth A. Flynn
Braje, Nelson & Janes, LLP
Michigan City, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Calvin Lowery, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | September 6, 2019 <br><br> Court of Appeals Case No. 18A-CR-2991 <br><br> Appeal from the LaPorte Superior Court <br><br> The Honorable Michael S. Bergerson, Judge <br><br> Trial Court Cause No. 46D01-1712-F4-1185 |

**Friedlander, Senior Judge.**

[1] Calvin Lowery appeals his conviction of dealing in cocaine or a narcotic drug with a prior conviction, a Level 4 felony.[1] He raises two issues: (1) whether the trial court erred in granting the State's motion to continue the trial; and (2) whether there is sufficient evidence to sustain his conviction. We affirm.

[2] Brittany Becker was a heroin user. She purchased heroin from Todd Hunsley, with whom she had gone to high school. Becker had been to Hunsley's apartment on many occasions. At the apartment, she met a man named "D." Tr. Vol. II, p. 45. Becker subsequently encountered D "at least thirty" times. *Id.*

[3] On one occasion, Becker became seriously ill, and one of her friends overdosed, after using heroin they had bought from Hunsley. As a result, Becker agreed to work for the LaPorte County Drug Task Force (the Task Force) as a paid confidential informant.

[4] On November 27, 2017, Becker contacted Hunsley by text or phone call at the request of Task Force police officers. She and Hunsley agreed that she would purchase heroin at Hunsley's apartment later in the day. Next, the officers searched Becker and gave her $40 in recorded buy money. They also hid a camera on her person. The camera recorded audio and video and also broadcast audio live to the officers.

---

[1] Ind. Code § 35-48-4-1 (2017).

[5] An officer drove Becker to Hunsley's apartment and parked nearby. Other officers watched Becker as she approached the apartment and knocked on the door. The individual Becker knew as D answered the door and let her inside. Hunsley was not present.

[6] Becker had intended to buy two baggies of heroin from Hunsley, but D told her he had only one for sale. Becker gave D $20, and he gave her a green plastic baggie containing a tan powdery substance. The substance was later submitted to a state laboratory for testing, and it was determined to be .33 grams of heroin and Benadryl.

[7] Meanwhile, Becker returned to the vehicle in which she had arrived. Surveillance officers watched her walk from the apartment to the vehicle. Becker gave the officers in the vehicle the green baggie and the unused $20. They searched her and removed the camera. They also paid her $100, an amount one officer later described as typical for an informant participating in a controlled buy involving heroin. Corporal Francisco Rodriguez of the Michigan City Police Department was one of the officers who monitored the transaction. He later reviewed the camera's recording.

[8] On December 7, 2017, a team of police officers, including Corporal Rodriguez, executed a search warrant at Hunsley's apartment. They found two men in the apartment. One of the men, who was later identified as Lowery, was lying on a makeshift bed in a large closet space. Corporal Rodriguez recognized Lowery from the recording as the person who had sold heroin to Becker. Tr. Vol. I,

State's Ex. 8, at 8:38. In addition, officers found a wallet, which contained Lowery's Illinois identification card, near his bed.

[9] On December 12, 2017, an officer texted Becker a photographic lineup of six unnamed persons. The lineup included a photograph of Lowery. The officer asked Becker if any of the individuals was D, and she identified Lowery as D.

[10] Meanwhile, on December 8, 2017, the State charged Lowery with dealing in cocaine or a narcotic drug as a Level 4 felony. On February 1, 2018, the trial court scheduled a jury trial for May 21, 2018. On March 22, 2018, Lowery filed a motion to continue the trial, which the court granted, rescheduling the trial for June 18, 2018.

[11] On June 1, 2018, the State filed a motion to continue the trial pursuant to Indiana Rule of Criminal Procedure 4(D), claiming that the state laboratory needed more time to complete testing on the heroin. Lowery did not file a response. Instead, on June 5, 2018, the court held a hearing on the State's motion, during which Lowery stated "he does not stipulate to that request for an extension." Tr. Vol. II, p. 4. The trial court granted the State's motion, rescheduling the trial for September 10, 2018.

[12] The court held a jury trial on September 10 and 11, 2018. Among other evidence, the State presented testimony by Becker, who identified Lowery as the person who sold heroin to her. The jury determined Lowery was guilty of dealing in cocaine or a narcotic drug as a Level 5 felony. Outside the presence of the jury, Lowery admitted that he had a prior qualifying conviction for

dealing in a controlled substance, which enhanced his Level 5 felony conviction to a Level 4 felony. On November 15, 2018, the court imposed a sentence, and this appeal followed.

## 1. State's Motion to Continue

[13] Lowery claims the trial court erred in granting the State's motion to continue the trial, arguing the State failed to provide valid grounds for an extension. In response, the State claims Lowery waived this claim by failing to file a motion for discharge, and that in the alternative, the extension was justified. We disagree with the State as to waiver, concluding that Lowery's refusal to agree to the extension preserved the issue for appellate review.

[14] An accused's right to a speedy trial is guaranteed by article I, section 12 of the Indiana Constitution and by the Sixth Amendment to the United States Constitution. *State v. Lindauer*, 105 N.E.3d 211 (Ind. Ct. App. 2018), *trans. denied*. Indiana Criminal Rule 4 was adopted to implement the right to a speedy trial. *Id.* The parties agree the State's motion to continue is governed by Indiana Criminal Rule 4(D), which provides:

> If when application is made for discharge of a defendant under this rule, the court be satisfied that there is evidence for the state, which cannot then be had, that reasonable effort has been made to procure the same and there is just ground to believe that such evidence can be had within ninety (90) days, the cause may be continued, and the prisoner remanded or admitted to bail; and if he be not brought to trial by the state within such additional ninety (90) days, he shall then be discharged.

[15]     The reasonableness of a continuance under Rule 4(D) is judged in the context of the particular case, and the decision of the trial court will not be disturbed except for an abuse of discretion. *Smith v. State*, 982 N.E.2d 393 (Ind. Ct. App. 2013), *trans. denied*. An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Bryant v. State*, 959 N.E.2d 315 (Ind. Ct. App. 2011).

[16]     In its June 1, 2018 motion for continuance, the State alleged it did not yet have test results on the heroin from the state laboratory. The State further alleged that a prosecutor had called the lab's director on May 31, 2018 and learned that due to a high caseload and a temporary staff shortage, the lab was unlikely to complete testing by the June 18, 2018 trial date. In addition, the State claimed the lab results were necessary to prove the case against Lowery, and the test results could be obtained within ninety days.

[17]     During the June 5, 2018 hearing, the prosecutor reiterated that she had called the lab's director, who had told her that she could not get the test results back in time for the June 18, 2018 trial date due to a staff shortage. The prosecutor further stated she filed the motion to continue the next day. Upon questioning by the trial judge, the prosecutor stated that the test results would be crucial to the case. Lowery, who was represented by counsel, did not ask any questions about the lab testing process or the date when the State had submitted the heroin for testing. In a pro se statement, Lowery complained that he had been incarcerated for seven months.

[18] Lowery argues the trial court did not sufficiently inquire into the reasonableness of the State's efforts, but the State presented evidence that it had reached out to the lab's director and further sought an extension immediately upon learning of a problem, several weeks prior to trial. This evidence is sufficient to meet the requirements of Rule 4(D), and the trial court's decision was not clearly against the logic and effect of the facts and circumstances. *See Wilhelmus v. State*, 824 N.E.2d 405 (Ind. Ct. App. 2005) (no abuse of discretion in granting Rule 4(D) motion; among other unavailable evidence, the lab needed more time to decrypt computer files); *cf. Small v. State*, 112 N.E.3d 738 (Ind. Ct. App. 2018) (State failed to demonstrate reasonable efforts to obtain test results; State erroneously delayed obtaining defendant's DNA sample after trial court granted request to take sample), *trans. denied*.

[19] Next, Lowery notes that at trial, the State presented testimony from Officer Anthony McClintock, who had transported the heroin to the lab. Officer McClintock testified that he had transported the heroin to the lab on June 4, 2018, after the State filed the motion to continue the trial but before the hearing on the motion. Lowery argues that the State's delay in transporting the heroin to the lab was unreasonable because the State could have done so at any time in the prior seven months. In effect, Lowery is citing evidence discovered at trial to relitigate the State's motion for an extension under Rule 4(D). But he did not object to the delay or otherwise raise this issue during trial, such as by requesting exclusion of the test results, during or after Officer McClintock's testimony. Lowery's failure to raise the issue at trial results in waiver on

appeal. *See Lenoir v. State*, 515 N.E.2d 529 (Ind. 1987) (failure to object to in-court identification at trial waived issue for appellate review, even though the court had addressed the same issue prior to trial).

[20] Lowery additionally claims the trial court erred because Indiana Criminal Rule 4(A) requires that if a defendant is held for more than six months without trial, the defendant must be released from incarceration, and in this case the trial was not held within the six-month deadline specified by Rule 4(A). Lowery never objected to his continued detention, and he at best "lost only the right to be released until trial." *Mills v. State*, 512 N.E.2d 846, 850 (Ind. 1987). His claim is now moot. *See id.* (determining claim under Rule 4(A) was moot after trial).

[21] Finally, Lowery also argues he should have been discharged because he was not tried within the ninety-day period set forth in Rule 4(D). When the trial court granted the motion for an extension of time on June 5, 2018, the court rescheduled the trial for September 10, 2018, ninety-seven days later. Lowery neither objected to the new trial date nor filed a motion to discharge. As a result, this aspect of his Rule 4(D) claim is procedurally defaulted. *See Dean v. State*, 901 N.E.2d 648 (Ind. Ct. App. 2009) (defendant must object to a trial date set after a Criminal Rule 4 deadline and move for discharge or waive the claim), *trans. denied*.

## 2. Sufficiency of the Evidence

[22] Lowery claims the State failed to provide sufficient evidence to prove that he was the person who sold heroin to Becker on November 27, 2017. The State

responds that Becker's identification of Lowery was reliable and based on numerous prior interactions with him.

[23] The standard of review for sufficiency of evidence claims is well-established:

> On appeal, this Court does not reweigh the evidence nor judge the credibility of the witnesses, but instead looks to the evidence most favorable to the verdict and to all the reasonable inferences to be drawn therefrom. In other words, we will affirm the conviction if the admitted evidence contains adequate probative value from which the jury could infer guilt beyond a reasonable doubt.

*Toney v. State*, 715 N.E.2d 367, 368-69 (Ind. 1999).

[24] In order to obtain a conviction of Level 4 felony dealing in cocaine or a narcotic drug as charged, the State was required to prove beyond a reasonable doubt that: 1) Lowery 2) knowingly or intentionally 3) delivered 4) heroin 5) in an amount less than one gram 6) with a prior similar conviction. Ind. Code § 35-48-4-1.

[25] Becker testified that she had been to Hunsley's apartment on numerous occasions and that, at the apartment, she met an individual who went by the name D. Becker further testified that she had seen D thirty times prior to November 27, 2017. In addition, after the controlled buy she identified Lowery as D in a photographic lineup, and she again identified Lowery as D at trial. Further, Corporal Rodriguez reviewed the camera recording of the controlled buy, and when he entered Hunsley's apartment on December 7, 2017, he recognized Lowery as the person who had sold heroin to Becker. This evidence

is sufficient to establish beyond a reasonable doubt that Lowery delivered heroin to Becker.

[26] Lowery argues that Becker's testimony should have been disregarded because it was "inherently unreliable" and "simply not believable."[2] Appellant's Br. p. 18. Lowery points to discrepancies between her trial testimony and her deposition. He further notes Becker is a convicted felon, and she had a grudge against Hunsley because he sold heroin that harmed her and her friend. Finally, Lowery notes the police paid Becker $100 for participating in the controlled buy. Lowery's arguments amount to a request to reweigh the evidence, which contravenes our standard of review. The jury was informed of each of the points Lowery raises here, and members of the jury were free to make their own decisions about Becker's credibility. *See Bowman v. State*, 51 N.E.3d 1174 (Ind. 2016) (evidence sufficient to support conviction for dealing in heroin; eyewitness identified Bowman as the dealer, and jury was informed of possible defects in the eyewitness's credibility).

[27] For the reasons stated above, we affirm the judgment of the trial court.

[28] Judgment affirmed.

---

[2] Lowery does not claim that the incredible dubiosity doctrine bars Becker's testimony. That doctrine provides that testimony should not be admitted when there is: 1) a sole testifying witness 2) testimony that is inherently contradictory, equivocal, or the result of coercion, and 3) a complete absence of circumstantial evidence. *Moore v. State*, 27 N.E.3d 749 (Ind. 2015).

Bailey, J., concurs

Kirsch, J., dissents with opinion.

| | |
|---|---|
| Calvin Lowery,<br><br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br><br>*Appellee-Plaintiff.* | September 6, 2019<br><br>Court of Appeals Case No.<br>18A-CR-2991 |

**Kirsch, Judge, dissenting.**

[29] I respectfully dissent.

[30] On June 1, 2018, the State filed a Verified Motion to Continue the trial date alleging that the State was not in possession of the lab results regarding the narcotics alleged to have been sold by the defendant Calvin Lowery. In its motion, the State alleged that the Indiana State Police Lab was unable to complete testing by the time of the June 18, 2018 trial, and the State would be unable to proceed without said results.

[31]     Lowery was denied his right to a speedy trial due to the failure of the State to process the evidence in a timely fashion. That failure was compounded by the State's lack of candor to the trial court. The State provided no information as to when the State provided the evidence to the lab for testing or regarding the State's efforts to procure the evidence before requesting a continuance, and the trial court never inquired to determine if the State's conduct was reasonable.

[32]     Lowery had been in custody since December 7, 2018, providing the State with ample time to have obtained the lab results. The State did not transport the narcotics to the state lab for testing until June 4, 2018, which was three days after the State's motion was filed, one day before the hearing on the State's motion, and nearly six months since Lowery's incarceration.

[33]     Lowery's trial commenced on September 10, 2018, which was in excess of six months, specifically 206 days, from the date the criminal charge was brought against Lowery. For its unjustified delay in seeking testing of the narcotics and its lack of candor to the trial court, I would remand with instructions to vacate Lowery's conviction and dismiss the charge against him.