

**FILED**

Sep 30 2016, 8:42 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

James H. Voyles
Jennifer M. Lukemeyer
Voyles Zahn & Paul
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Ricky R. House, Jr., *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff.* | September 30, 2016 <br><br> Court of Appeals Case No. 65A01-1511-CR-1979 <br><br> Appeal from the Posey Circuit Court <br><br> The Honorable James M. Redwine, Judge <br><br> Trial Court Cause No. 65C01-1409-F1-329 |

**Barnes, Judge.**

## Case Summary

[1] Ricky House appeals his convictions for three counts of Level 1 felony rape, two counts of Level 5 felony criminal confinement, and one count each of

Level 5 felony kidnapping, Class A misdemeanor battery resulting in bodily injury, and Class A misdemeanor pointing a firearm. We affirm.

## Issue

House raises one issue, which we restate as whether the trial court properly excluded evidence of the victim's prior drug usage.

## Facts

House and his girlfriend, Kendra Tooley, lived in a trailer in Stewartsville that did not have running water. House told Tooley that he had a fantasy about abducting a woman and raping her.

On July 9, 2014, J.L. was living in a shelter in southern Indiana. She was walking back to the shelter in the early evening when House stopped to talk to her. J.L. knew House and Tooley because she had previously worked with Tooley. House asked if J.L. wanted to go with him to see Tooley, and House agreed to bring J.L. back to the shelter before her midnight curfew. J.L. went to House's trailer where she smoked marijuana with House and Tooley and drank alcohol.

As J.L. was getting ready to leave so that House could return her to the shelter, House "came at" her and placed a rag soaked with chloroform on her face. Tr. p. 286. J.L. lost consciousness and, when she woke up, she was naked, blindfolded, had zip ties on her wrists and ankles, and was tied "spread eagle" on a bed. *Id.* at 287. House repeatedly sexually assaulted J.L. over the next

fifty-eight days. Sometimes Tooley would hold J.L.'s head and force her to give House oral sex. House and Tooley made J.L. wear a belt, dog collar, and leash. About halfway through the fifty-eight days, House constructed a wooden cage in the trailer. House and Tooley would place J.L. in the cage and lock the door with a padlock. If J.L. did exactly what was asked of her, she would be allowed to sit on the couch and watch TV. Either House or Tooley was with J.L. at all times. When J.L. screamed and struggled, House told her "to shut up or he would shoot [her], kill [her]." *Id.* at 289. House and Tooley repeatedly threatened to shoot or "sell" J.L. *Id.* at 291. House burned J.L.'s purse and other possessions. According to J.L., House and Tooley regularly consumed marijuana and methamphetamine during this time period.

[6]     On September 4, 2014, Ronald Higgs came to the trailer to visit Tooley, who was his ex-wife. Tooley was having back pain and had asked Higgs to bring her painkillers. When Higgs arrived, Tooley told him that they were keeping a woman in a cage in the next room. House gave J.L. a t-shirt to wear and brought her out of the cage. Higgs did not recognize J.L., who "looked like a whipped dog," was wearing a dog collar, had a rope hanging down her back, was disheveled, and "had a slight odor to her." *Id.* at 398. Tooley told J.L., "The rules don't change because [Higgs] is here." *Id.* at 439. Eventually, J.L. was able to tell Higgs that she "didn't want to be there" and that "they wouldn't let [her] leave." *Id.* at 320. On September 6, 2014, Higgs was leaving and gave House and Tooley $100 and said that he was taking J.L. with him. House and Tooley refused to let J.L. leave with Higgs and said, "She is not going

nowhere." *Id.* at 421. Higgs and House got into a physical altercation, while Tooley grabbed the dog collar and tried dragging J.L. back to the cage. House retrieved a gun, which he pointed at Higgs. Higgs ultimately convinced House that J.L. was leaving with him. Higgs took J.L. to his apartment in Evansville where she showered, ate, and called her mother. J.L.'s mother contacted the police, who had been looking for J.L.

[7] The State charged House with sixteen counts: (1) Level 1 felony rape; (2) Level 1 felony rape; (3) Level 1 felony rape; (4) Level 1 felony rape; (5) Level 1 felony rape; (6) Level 1 felony rape; (7) Level 1 felony conspiracy to commit rape; (8) Level 3 felony criminal confinement; (9) Level 5 felony criminal confinement; (10) Level 3 felony criminal confinement; (11) Level 5 felony criminal confinement; (12) Level 3 felony kidnapping; (13) Level 5 felony kidnapping; (14) Level 3 felony conspiracy to commit criminal confinement; (15) Class A misdemeanor battery resulting in bodily injury; (16) Class A misdemeanor pointing a firearm.

[8] The State filed a motion in limine to prevent House from presenting any evidence of prior drug or alcohol usage by the State's witnesses. The trial court granted the motion "without objection" by House and directed that, if House intended to offer any such evidence, he would first seek permission of the trial court outside of the presence of the jury. App. V. II. p. 10. At the jury trial, J.L. testified regarding her use of marijuana, alcohol, methamphetamine, and Valium during her captivity. Regarding the methamphetamine, she testified that she used it twice, once by smoking it and once by injecting it. She testified

that she injected it because "I have used drugs in the past and I have used it like that before" and injecting the drug can increase the effect. Tr. p. 367. House did not seek to introduce evidence concerning J.L.'s prior drug usage during her testimony. At the close of his case-in-chief, House recalled J.L. to make an offer of proof regarding her prior drug usage. The jury found House guilty as charged.

[9] The trial court later vacated the verdicts on Counts 1, 3, 5, 7, 8, 10, 12, and 14, leaving judgments for Count 2 (Level 1 felony rape), Count 4 (Level 1 felony rape), Count 6 (Level 1 felony rape), Count 9 (Level 5 felony criminal confinement), Count 11 (Level 5 felony criminal confinement), Count 13 (Level 5 felony kidnapping), Count 15 (Class A misdemeanor battery resulting in bodily injury), and Count 16 (Class A misdemeanor pointing a firearm). The trial court sentenced House to thirty years on each of the Level 1 felony convictions, three years on each of the Level 5 felony convictions, and one year on each of the Class A misdemeanor convictions. The trial court ordered the sentences for Counts 2, 4, 6, and 13 to be consecutive and the remainder of the sentences to be served concurrently for an aggregate sentence of ninety-three years. House now appeals.

## Analysis

[10] House argues that the trial court abused its discretion by excluding evidence of J.L.'s prior drug usage. The exclusion of evidence rests within the sound discretion of the trial court, and we review the exclusion of evidence only for an abuse of discretion. *Griffith v. State*, 31 N.E.3d 965, 969 (Ind. 2015). Even if a

trial court errs by excluding evidence, "we will not overturn the conviction if the error is harmless." *Id.* An error is harmless if "the probable impact of the evidence upon the jury is sufficiently minor so as not to affect a party's substantial rights." *Id.*; *see* Ind. Trial Rule 61.

[11] House argues that the trial court should have admitted evidence of J.L.'s prior drug use because "the addiction evidence support[ed] House's claim that [J.L.'s] usage, and thus other conduct, was voluntary while at the trailer" and "it also explained her motive for being and staying at the trailer." Appellant's Br. p. 13. According to House, the addiction evidence created an "inference of voluntariness." *Id.* at 14.

[12] The State first responds that the issue is waived because House failed to object to the motion in limine and never asked the trial court to revisit the ruling or to admit the evidence. A motion in limine is appropriate to determine the admissibility of evidence outside of the jury's hearing in order to avoid prejudice. *Miller v. State*, 716 N.E.2d 367, 370 (Ind. 1999). In order to preserve an error for appellate review, however, a party must do more than challenge the ruling on a motion in limine. *Id.* The evidence must be offered at trial to give the trial court an opportunity to rule on its admissibility at that time. *Id.* A party traditionally makes an offer to prove after the trial court has sustained an objection to the admission of the party's evidence. *Harman v. State*, 4 N.E.3d 209, 216 (Ind. Ct. App. 2014), *trans. denied*.

[13] Here, House did not object to the motion in limine. During J.L.'s testimony, he did not attempt to question her regarding her prior drug usage and did not raise the issue with the trial court. At the end of presenting his case-in-chief, House made an offer of proof regarding J.L.'s prior drug usage. Before making the offer of proof, House's counsel said, "We expect your ruling will be it is not coming in." Tr. p. 1021. The trial court said, "It is not coming in," and House's counsel commented, "I may make such a compelling offer, Your Honor." *Id.* Trial counsel then stated, "Well, maybe it is coming in." *Id.* J.L. later testified outside the presence of the jury that her substance abuse issues with methamphetamine began in 2005, that she had been to rehab on three occasions, and that she had relapsed after each rehab. House did not revisit the admissibility of the evidence with the trial court, and the trial court never commented on its admissibility. We question whether House used the proper procedure to have the trial court consider the admissibility of the evidence of J.L.'s prior drug usage and make an offer of proof. However, waiver notwithstanding, the trial court did not abuse its discretion by excluding the evidence.

[14] Indiana Evidence Rule 402 provides that relevant evidence is generally admissible. Under Indiana Evidence Rule 401, "[e]vidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Our supreme court has "'consistently upheld decisions of trial courts excluding evidence of a witness' past drug use as irrelevant.'" *Jenkins v. State*, 729 N.E.2d

147, 149 (Ind. 2000) (quoting *Williams v. State*, 681 N.E.2d 195, 199 (Ind. 1997)).

> A witness's drug abuse would be pertinent only as to the witness's ability to recall events on the dates in question had he been using drugs at that time, or if the witness was on drugs at trial, or if drug abuse was so extensive as to impair the witness's mind.

*Crocker v. State*, 563 N.E.2d 617, 623 (Ind. Ct. App. 1990) (citing *Stonebraker v. State*, 505 N.E.2d 55, 59 (1987)), *trans. denied*; *see also Palmer v. State*, 654 N.E.2d 844, 847-48 (Ind. Ct. App. 1995).

[15] Our supreme court addressed a similar argument in *Jenkins*. There, the defendant, who was accused of rape, criminal deviate conduct, criminal confinement, and being an habitual offender, alleged that his sexual contact with the victim was consensual because she attempted to purchase marijuana from him, they smoked marijuana together, and they had sexual intercourse. The victim testified that the defendant entered her car while she was stopped at a traffic light and then sexually assaulted her. Our supreme court held that the victim's prior marijuana usage was not relevant to whether she was sexually assaulted by the defendant. "If relevant at all to the highly collateral issue of whether she purchased drugs from [the defendant], it is clearly outweighed by the danger of unfair prejudice." *Jenkins*, 729 N.E.2d at 149. Consequently, the court determined that the trial court did not abuse its discretion by limiting the defendant's cross-examination of the victim regarding her prior drug usage.

[16] Here, J.L. testified regarding her drug usage during the time of her captivity. There is no indication that her prior drug usage was so extensive as to impair her mind. Further, it is not relevant as to whether J.L. was held against her will and repeatedly sexually assaulted. We agree with the State that admission of this evidence was an "attempt to smear the victim's character by labeling her as a drug addict who was willing to abandon her family and submit to degrading and humiliating sexual assaults and to be treated like an animal so long as she received methamphetamine." Appellee's Br. p. 19. The trial court properly excluded the evidence of J.L.'s prior drug usage.

[17] Moreover, even if the trial court erred by excluding the evidence, any error was harmless. When J.L. testified regarding her methamphetamine usage in captivity, she testified that she used it twice, once by smoking it and once by injecting it. She testified that she injected it because "I have used drugs in the past and I have used it like that before" and injecting the drug can increase the effect. Tr. p. 367. Consequently, the jury was aware of J.L.'s prior usage of methamphetamine. J.L. consistently testified that she did not consent to the sexual assaults and that she did not stay at House and Tooley's trailer voluntarily. Tooley, who was called as a defense witness, also testified that J.L.'s captivity was not consensual and that "she was being held against her will." *Id.* at 946. The evidence was overwhelming that J.L. did not stay at the trailer voluntarily and did not consent to the sexual assaults. Any error in the exclusion of evidence regarding her prior drug usage did not affect House's substantial rights and was harmless.

# Conclusion

[18] The trial court properly excluded evidence of J.L.'s prior drug usage. Even if the trial court erred by excluding the evidence, any error was harmless. We affirm.

[19] Affirmed.

Riley, J., and Bailey, J., concur.