

# IN THE
# Court of Appeals of Indiana

Ricky House, Jr.,

*Appellant-Petitioner*

v.

State of Indiana,

*Appellee-Respondent*



FILED

Jan 23 2026, 8:29 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

---

January 23, 2026

Court of Appeals Case No.
25A-PC-620

Appeal from the Posey Circuit Court

The Honorable Craig Goedde, Judge

Trial Court Cause No.
65C01-2202-PC-46

---

**Opinion by Judge May**
Judges Altice and Foley concur.

**May, Judge.**

[1]     Ricky House, Jr., appeals following the denial of his petition for post-conviction relief. He raises one issue on appeal: whether he received ineffective assistance from trial counsel. We affirm.

## Facts and Procedural History

[2]     In our opinion deciding House's direct appeal of his criminal convictions, we explained the facts of his offenses:

> House and his girlfriend, Kendra Tooley, lived in a trailer in Stewartsville that did not have running water. House told Tooley that he had a fantasy about abducting a woman and raping her.
>
> On July 9, 2014, J.L. was living in a shelter in southern Indiana. She was walking back to the shelter in the early evening when House stopped to talk to her. J.L. knew House and Tooley because she had previously worked with Tooley. House asked if J.L. wanted to go with him to see Tooley, and House agreed to bring J.L. back to the shelter before her midnight curfew. J.L. went to House's trailer where she smoked marijuana with House and Tooley and drank alcohol.
>
> As J.L. was getting ready to leave so that House could return her to the shelter, House "came at" her and placed a rag soaked with chloroform on her face. J.L. lost consciousness and, when she woke up, she was naked, blindfolded, had zip ties on her wrists and ankles, and was tied "spread eagle" on a bed. House repeatedly sexually assaulted J.L. over the next fifty-eight days. Sometimes Tooley would hold J.L.'s head and force her to give House oral sex. House and Tooley made J.L. wear a belt, dog collar, and leash. About halfway through the fifty-eight days,

House constructed a wooden cage in the trailer. House and Tooley would place J.T. [sic] in the cage and lock the door with a padlock. If J.T. [sic] did exactly what was asked of her, she would be allowed to sit on the couch and watch TV. Either House or Tooley was with J.T. [sic] at all times. When J.T. [sic] screamed and struggled, House told her "to shut up or he would shoot [her], kill [her]." House and Tooley repeatedly threatened to shoot or "sell" J.L. House burned J.L.'s purse and other possessions. According to J.L., House and Tooley regularly consumed marijuana and methamphetamine during this time period.

On September 4, 2014, Ronald Higgs came to the trailer to visit Tooley, who was his ex-wife. Tooley was having back pain and had asked Higgs to bring her painkillers. When Higgs arrived, Tooley told him that they were keeping a woman in a cage. Higgs did not recognize J.L., who "looked like a whipped dog," was wearing a dog collar, had a rope hanging down her back, was disheveled, and "had a slight odor to her." Tooley told J.L., "The rules don't change because [Higgs] is here." Eventually, J.T. [sic] was able to tell Higgs that she "didn't want to be there" and that "they wouldn't let [her] leave." On September 6, 2014, Higgs was leaving and gave House and Tooley $100 and said that he was taking J.T. [sic] with him. House and Tooley refused to let J.L. leave with Higgs and said, "She is not going nowhere." Higgs and House got into a physical altercation, while Tooley grabbed the dog collar and tried dragging J.L. back to the cage. House retrieved a gun, which he pointed at Higgs. Higgs ultimately convinced House that J.L. was leaving with him. Higgs took J.L. to his apartment in Evansville where she showered, ate, and called her mother. J.L.'s mother contacted the police, who had been looking for J.L.

*House v. State*, 61 N.E.3d 1230, 1231-32 (Ind. Ct. App. 2016) (internal citations to the record omitted) (all brackets in original except those noting erroneous transcription of J.L. as J.T.), *trans. denied*.

[3]     The State charged House with sixteen counts: six counts of Level 1 felony rape,[1] two counts each of Level 3 felony criminal confinement[2] and Level 5 felony criminal confinement,[3] and one count each of Level 1 felony conspiracy to commit rape,[4] Level 3 felony kidnapping,[5] Level 5 felony kidnapping,[6] Level 3 felony conspiracy to commit criminal confinement,[7] Class A misdemeanor battery resulting in bodily injury,[8] and Class A misdemeanor pointing a firearm.[9] *Id.* at 1232. The jury found House guilty on all counts. *Id.* To avoid double jeopardy, the trial court entered a judgment of conviction on four counts of Level 1 felony rape, two counts of Level 5 felony criminal confinement, and one count each of Level 5 felony kidnapping, Class A misdemeanor battery

---

[1] Ind. Code § 35-42-4-1(b) (2014).

[2] Ind. Code § 35-42-3-3(b)(2) (2014).

[3] Ind. Code § 35-42-3-3(b)(1) (2014).

[4] Ind. Code § 35-42-4-1(b) (2014) & Ind. Code § 35-41-5-2 (2014).

[5] Ind. Code § 35-42-3-2(b)(2) (2014).

[6] Ind. Code § 35-42-3-2(b)(1) (2014).

[7] Ind. Code § 35-42-3-3(b)(2) (2014) & Ind. Code § 35-41-5-2 (2014).

[8] Ind. Code § 35-42-2-1(c) (2014).

[9] Ind. Code § 35-47-4-3 (2014).

resulting in bodily injury, and Class A misdemeanor pointing a firearm. *Id*. The trial court imposed an aggregate sentence of ninety-three years. *Id*.

[4] In his direct appeal, House argued "the trial court abused its discretion by excluding evidence of J.L.'s prior drug usage." *Id*. We affirmed House's convictions and held the trial court did not abuse its discretion in excluding the evidence. *Id*. at 1234. In addition, we explained that "even if the trial court erred by excluding the evidence, any error was harmless." *Id*.

[5] On February 11, 2022, House filed a verified petition for post-conviction relief alleging that his trial counsel was constitutionally ineffective.[10] The petition alleged House's trial counsel performed deficiently in several respects, including calling Tooley to testify at trial and not objecting to evidence the State elicited during its cross-examination of Tooley. House also alleged his trial counsel's preparation for trial and sentencing was deficient. He asserted his trial counsel failed to adequately question prospective jurors during voir dire and did not act on information that a juror was seen reading a newspaper. House's trial counsel passed away while House's petition for post-conviction relief was pending.

[6] The post-conviction court held a hearing regarding House's petition on August 15, 2024. On February 12, 2025, the post-conviction court issued an order with

---

[10] The petition also alleged House was entitled to post-conviction relief because of prosecutorial misconduct and juror misconduct, but House does not appeal the post-conviction's court denial of those claims.

findings of fact and conclusions of law denying House's petition for post-conviction relief. The post-conviction court concluded House was not prejudiced by any of the alleged flaws in his trial counsel's defense. It stated:

> [T]here was overwhelming evidence proving House committed the charged acts. Namely, [J.L.] testified to her first-hand experiences—at least to the ones in which she was not drugged and rendered unconscious. Likewise, Higgs testified to what he saw, what Tooley told him, what House told him, and what he did to remove [J.L] from the situation. This evidence alone was sufficient to convict House.

(App. Vol. 2 at 186.)

## Discussion and Decision

[7] House asserts the post-conviction court erred when it denied his petition. In the post-conviction court, House bore the burden of proving his claims by a preponderance of the evidence. *See* Ind. Post-Conviction Rule 1(5) ("The petitioner has the burden of establishing his grounds for relief by a preponderance of the evidence."). The post-conviction court ruled against House, and therefore, he "appeals from a negative judgment and must establish on appeal the evidence as a whole, leads unmistakably and unerringly to a conclusion contrary to that reached by the post-conviction court." *Gillespie v. State*, 244 N.E.3d 423, 433 (Ind. Ct. App. 2024).

[8] The Sixth Amendment to the United States Constitution guarantees a criminal defendant "the assistance of counsel for his defense." The actualization of this right "requires counsel's assistance be effective." *Warren v. State*, 146 N.E.3d

972, 977 (Ind. Ct. App. 2020), *trans. denied*, *cert. denied*, 141 S. Ct. 858 (2020).

"There is a strong presumption that trial counsel provided effective representation, and a petitioner must put forth strong evidence to rebut that presumption." *Id.* "Isolated poor strategy, inexperience, or bad tactics does not necessarily constitute ineffective assistance." *McCullough v. State*, 973 N.E.2d 62, 74 (Ind. Ct. App. 2012) (internal citation omitted), *trans. denied*. Rather, we review a petitioner's claim of ineffective assistance by applying the two-part test articulated in *Strickland v. Washington*, 104 S. Ct. 2052 (1984). *Bobadilla v. State*, 117 N.E.3d 1272, 1280 (Ind. 2019). That test requires the petitioner to "prove: (1) counsel rendered deficient performance, meaning counsel's representation fell below an objective standard of reasonableness as gauged by prevailing professional norms; and (2) counsel's deficient performance prejudiced the defendant[.]" *Id.* "[T]o demonstrate prejudice from counsel's deficient performance, a petitioner need only show 'a *reasonable probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Middleton v. State*, 72 N.E.3d 891 (Ind. 2017) (quoting *Strickland*, 104 S. Ct. at 2068) (emphasis in *Middleton*). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 104 S. Ct. at 2068. "Although the performance prong and the prejudice prong are separate inquiries, failure to satisfy either prong will cause the claim to fail. If we can easily dismiss an ineffective assistance claim based upon the prejudice prong, we may do so without addressing whether counsel's performance was deficient." *Henley v. State*, 881 N.E.2d 639, 645 (Ind. 2008) (internal citation omitted).

[9] House asserts his trial counsel's "most egregious example of ineffective assistance of counsel" was his decision to call Tooley to testify during House's case-in chief. (Appellant's Br. at 16.) House contends his trial counsel should have known that Tooley's testimony would incriminate House because of Tooley's deposition testimony. House also faults his trial counsel for not objecting to Tooley's testimony about uncharged bad acts by House.

[10] However, even without Tooley's testimony, the evidence of House's guilt was overwhelming. J.L. gave detailed testimony regarding how House and Tooley treated her during her nearly two months of confinement. She described how House used chloroform to render her unconscious and that when she regained consciousness, she was naked, blindfolded, and restrained with zip ties to a bed. J.L. explained her hands turned "blue from not having any circulation and not being able to move [her] body at all for hours." (Trial Tr. Vol. 2 at 291.) J.L. relayed that during her confinement, House and Tooley threatened to either kill or sell her if she attempted to escape. She also described House whipping her and his sexual assaults of her. These sexual assaults included an instance when House rubbed his naked body against J.L. while J.L. was naked and restrained to a bed. House did this despite J.L. telling him "[t]o stop, [she] didn't want it. Just let [her] go." (*Id.*) She explained the assaults occurred so often that she lost count and included both forced sexual intercourse and oral sex. J.L. identified the wooden cage House built and explained that House and Tooley

would confine her in the cage for hours if she disobeyed their orders. [11]  She also described the various other methods of restraint House and Tooley used to confine her.  She identified a dog collar and leash and blindfolds House and Tooley forced her to wear.[12]

[11]  In addition, Higgs's account of the last two days of J.L.'s confinement and the struggle to remove her from House's trailer was largely consistent with J.L.'s testimony about those same events.  Moreover, physical evidence corroborated J.L.'s account.  When the police responded to J.L.'s mother's call, they observed several deep red ligature marks on J.L.'s neck, arms, and wrists.  J.L. also had additional cuts and bruises on other areas of her body.  Inside House's trailer, the police observed that the trailer had sheets over the windows to prevent others from looking into the trailer and J.L. from looking out.  Inside the trailer, officers found various items J.L. described Tooley and House using to torture her, including belts, zip ties, bungee cords, a mattress with elastic cords wrapped around it, rope, a whip, and a dog collar with rope attached to it.  A latch lock and padlock on the bedroom door allowed it to be secured from the outside.  Inside the bedroom, officers found the cage where House had confined J.L.  J.L.'s DNA was present on items recovered from the cage, and

---

[11] The wooden cage was identified, offered, and admitted into evidence as Exhibit 1.  Due to the bulk and nature of the exhibit, it remained in the custody of Posey County, and a photograph of the original exhibit was substituted into the trial court record.

[12] The dog collar and leash were identified, offered, and admitted as State's Exhibit 6, and the blindfolds were identified, offered, and admitted as State's Exhibits 7 and 8.  Due to the bulk and nature of those exhibits, they remained in the custody of Posey County and photographs of the exhibits were substituted into the trial court record.

J.L.'s DNA and House's DNA were on a bungee cord found attached to a barstool. Officers also found bottles of chloroform inside the trailer. A digital camera recovered from the trailer had pictures of J.L. naked, blindfolded, and tied to a bed. The digital camera also contained pictures of J.L. performing oral sex on House. While incarcerated awaiting trial, House sent a note to his sister listing items he wanted her to remove from his trailer, and this note led officers to find a shotgun hidden underneath a garden tub.

[12] In short, House was found guilty because of the mountain of evidence the State presented of his guilt and not because of any alleged deficiencies in his trial counsel's performance. Even if House had been represented by the most capable defense attorney imaginable, the jury still would have returned a guilty verdict, and the trial court still would have imposed a lengthy sentence. There is not a reasonable probability that the outcome of House's trial would have been different had his trial counsel performed differently. For that reason, we do not need to evaluate whether House's other criticisms of his trial counsel's performance constitute deficient performance because he was not prejudiced by any of them, and we affirm the post-conviction court's denial of his petition for post-conviction relief. *See*, *e.g.*, *Isom v. State*, 170 N.E.3d 623, 649-50 (Ind. 2021) (holding post-conviction relief petitioner was not prejudiced by trial counsel's alleged failures given overwhelming evidence supporting jury's verdict that he receives the death sentence).

## Conclusion

House's claim of ineffective assistance of trial counsel fails because he cannot satisfy the prejudice prong of the *Strickland* analysis. Accordingly, we affirm the post-conviction court's denial of his petition for post-conviction relief.

Affirmed.

Altice, J., and Foley, J., concur.

ATTORNEY FOR APPELLANT

Michael Frischkorn
Brand & Morelock
Greenfield, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General
Indianapolis, Indiana

Ellen H. Meilaender
Supervising Deputy Attorney General
Indianapolis, Indiana